N. & M. FRIEDMAN CO. *v.* ATLAS ASSURANCE CO.[1]

1. FIRE INSURANCE—FALL OF INSURED BUILDING—CAUSE—EVIDENCE—SETTING ASIDE VERDICT.
    In an action on a fire policy which provided that the insurance should terminate if the building should fall, except as the result of fire, evidence examined, and *held* not only to warrant a finding by the jury that the fall of the building was caused by fire, but to preclude the setting aside of such finding as against the weight of the evidence.

2. SAME—APPEAL—HARMLESS ERROR.
    In an action on a fire policy providing that the insurer should not be liable for any loss caused by explosion unless fire should ensue, and then only for the damage by fire, and that the liability of the company should cease if the building should fall, except as the result of fire, the jury found the company liable for its stipulated proportion of the total loss. *Held,* that as this finding necessarily involved a determination that the fall of the building was caused by fire, and not by an explosion, error, if any, in submitting to the jury the question of whether the building fell as the result of an explosion, as well as in admitting testimony as to the proportion of the loss caused by fire, on the assumption that there had been an explosion, was harmless.

3. SAME—BURDEN OF PROOF.
    A provision in a fire policy that if the building containing the insured property should fall, except as the result of fire, the insurance should immediately cease, was a condition subsequent, so that in an action on such policy to recover for the destruction of the property by fire, in which it appeared that

[1]Rehearing denied June 23, 1903.

the building fell, the burden was on the insurer to prove, as a defense, that it fell from some other cause than fire.

4. Evidence—Expert Testimony.

A hypothetical question detailing the method adopted to remodel and improve the interior of a building, and asking if witness thought such construction safe, was not objectionable as not a proper subject for expert testimony.

5. Same—Appeal—Objections.

Where a hypothetical question was objected to below merely on the ground that it did not state facts sufficient to enable the witness to give an intelligent opinion, and that it was not a proper subject for expert testimony, an objection that it omitted certain facts which should have been stated, and assumed some facts not proved, could not be raised on appeal.

6. Same—Cause of Fall of Building.

Upon an issue as to whether the fall of an insured building was caused by fire, in which there was evidence that fire was seen to issue from the building prior to its fall, and that the construction of the building was safe, expert testimony by contractors and builders that a fire which burned off the ceiling or floor joists would occasion the fall of the building in the manner in which it fell was not objectionable as assuming facts not in evidence.

7. Same.

The matter was a proper subject for expert testimony.

Error to Kent; Perkins, J. Submitted January 16, 1903. (Docket No. 54.) Decided May 12, 1903.

*Assumpsit* by the N. & M. Friedman Company against the Atlas Assurance Company on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Crane, Norris & Drew* (*Russell C. Ostrander*, of counsel), for appellant.

*Knappen, Kleinhans & Knappen, G. A. Wolf*, and *J. H. Tatem*, for appellee.

Carpenter, J. In the court below, plaintiff recovered a verdict and judgment against the defendant for loss

under an insurance policy. This policy was a Michigan standard policy. It bore date August 31, 1900, and, for the term of one year from September 10, 1900, insured plaintiff, to an amount not exceeding $2,000, on its stock of merchandise, situated at Nos. 70 and 72 Monroe street, Grand Rapids, Mich. The policy contained these clauses:

"Other concurrent insurance permitted."

"This company shall not be liable under this policy for a greater proportion of any loss on the described property * * * than the amount hereby insured shall bear to the whole insurance."

"This company shall not be liable for loss caused directly or indirectly by invasion, * * * or (unless fire ensues, and, in that event, for the damage by fire only) by explosion of any kind."

"If a building, or any part thereof, fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

At 10 minutes to 2 on the morning of July 18, 1901, about half of the building which contained plaintiff's stock of goods fell to the ground. The larger portion of the stock was carried with it. At 3 o'clock it was discovered that the ruins were on fire, and the fire thus discovered consumed practically all the stock insured. Plaintiff had other insurance upon the property destroyed, which, together with that of the defendant, amounted to $100,000, so that defendant, under the terms of its policy, was liable for one-fiftieth of the loss covered by the policy.

Upon the trial in the court below, plaintiff insisted that the fall of the building was caused by fire. Defendant denied this. This issue was submitted to the jury. Plaintiff also insisted that the evidence warranted the jury in finding that the building fell in consequence of an explosion not directly caused by fire, and that, if they did so find, defendant would be responsible for its proportion of so much of the destruction of goods as was caused by the subsequent fire, which, according to plaintiff's testimony, would be about 95 per cent. of the total loss. Defendant denied that the evidence warranted any such finding.

This issue was submitted to the jury. The court charged the jury that, it being conceded that the stock was destroyed by fire, the burden rested upon the defendant to prove that the building fell from some other cause than fire. The jury rendered a verdict for $1,982.55, which was one-fiftieth of the plaintiff's total loss.

Defendant asks a reversal of the judgment on these grounds:

(1) That there was no evidence from which the jury could find that the fall of the building was caused by fire.

(2) That their finding that it was so caused was so against the weight of the evidence that it should be set aside.

(3) That the evidence did not warrant submitting to the jury the question of whether the fall of the building was caused by an explosion.

(4) That the court erred in charging that the burden of proof rested upon the defendant to show that fire did not cause the building to fall.

(5) That the court erred in admitting in evidence certain expert testimony.

We will proceed to discuss each of these questions.

1. Did the evidence warrant the jury in finding that the fall of the building was caused by fire?

2. Was their finding that it was so caused against the weight of the evidence?

These questions are so related that they will be considered together.

It may be taken as established by the testimony that immediately after the building fell, and for more than an hour thereafter, there was no appearance of fire in or about the ruins. There was no flame or smoke arising from the *débris*. No charred timbers or embers were visible. It appears, too, that plaintiff had been remodeling and improving the interior of its store, and had cut into and removed some of the partition walls in such a way as to afford evidence that it had thereby weakened the building. If we looked at these circumstances alone, the inference that fire did not cause the building to fall would

be very strong. On the other hand, plaintiff produced before the jury no less than six witnesses who testified that, before the building fell, they saw a flame of fire—some of them spoke of it as a red sheet of flame—shoot up from the top of the building. Defendant insists that this testimony should be disregarded, for several reasons:

(a) That it is inconsistent with the testimony of other observers. It is true that this testimony is not in accord with that of several witnesses for the defendant. It may be said, however, that, of the witnesses who gave opposing testimony, only three were in a position to have observed this flame, had it been visible as plaintiff's witnesses testify.

(b) That this testimony is inconsistent with the fact that the ruins showed no appearance of fire for more than an hour. There is testimony tending to prove that the contents of the building were covered, after it fell, by mortar and brick. It is the theory of the plaintiff that the fire which occasioned the fall of the building was thus retarded and concealed for more than an hour after the building fell. This court cannot say that that theory was unsound, especially as there were placed before the jury instances where fire was concealed for some hours under conditions somewhat similar.

(c) That the fire which these witnesses described did not come from the top of the building before it fell, but was the flash occasioned by the building itself, during its fall, striking the electric-light wires. We cannot accept this hypothesis without discrediting the testimony of the witnesses. They say it did come from the top of the building, and that it did precede the fall, and several of them testify that they saw these electric-light flashes after they saw the blaze shoot from the top of the building.

(d) That the witnesses who gave this testimony should not be believed, for various reasons: That several of them could not have seen this blaze from their location. This does not so clearly appear that we are authorized to accept this argument. One of them, who was traveling on the street, attempts to locate his position, and says he

was "about" at a certain point. Granting it to be true that, if he had been exactly at that point, he could not have seen, we have no right, in examining his testimony, to believe, when he said "about," that he meant to be exact,—particularly when, as a result, it leads to our discrediting his entire testimony.

(e) It is said that some of these witnesses should be discredited because some of their testimony is contradictory or inconsistent with former statements. If this were true of all of plaintiff's witnesses, it would present a strong argument in favor of setting aside the verdict because against the weight of the testimony. But it is not true of all of them.

It is our judgment, therefore, that not only was there evidence upon this issue to submit to the jury, but that their verdict thereon should not be set aside because it was against the weight of the evidence.

3. Did the evidence warrant the court in submitting to the jury plaintiff's claim that the building fell in consequence of an explosion? In our judgment, we need not discuss this question. The verdict of the jury was for one-fiftieth of the entire amount, and not for one-fiftieth of a smaller amount, as it would have been had they found that the building fell because of an explosion. In other words, the amount of the verdict proves that the jury found that the building fell in consequence of fire.

4. Did the court err in charging the jury that, plaintiff's stock having been destroyed by fire, the burden of proving that the fall of the building was not occasioned by fire was thereby transferred to defendant? This precise question was adjudicated in *Western Assurance Co.* v. *J. H. Mohlman Co.*, 28 C. C. A. 157, 83 Fed. 811, 40 L. R. A. 561. The policy in that case was exactly like the policy before us, except in amount, name of insured, and description of property. It appears from the statement of facts that the insurance covered a stock of groceries and merchandise "while contained in brick building Nos. 38–40 North Moore street and 156 Franklin street. On April 30,

1895, the property insured was destroyed by fire. At or about the time of the fire the building fell, and the issue of fact in the case was whether the fall preceded the fire, or was itself the result of the fire. Upon this issue the testimony was conflicting, and the verdict of the jury was adverse to the insurance company." The opinion in the case, written by Circuit Judge Lacombe, and concurred in by his associates, Circuit Judge Shipman and Mr. Justice Peckham, of the Supreme Court of the United States, is so applicable to this case, and so instructive in its reasoning and discussion of authorities, that we quote at length therefrom:

"The trial judge charged the jury that the burden of proof rested upon the defendant (the insurance company) to show, by a preponderance of evidence, that 'the fall preceded the fire;' that 'this building did not fall as the result of fire.' Exceptions to the charge, and to refusals to charge the converse of this proposition, sufficiently present the question of the correctness of this ruling. It will not be necessary to repeat the text either of the charge or of the requests. The trial judge construed the clause referring to a fall of the building as a proviso or condition subsequent, defeating any claim of the insured. If it be such, no one here disputes the proposition that the burden of proving the happening of the subsequent condition would rest upon the insurer. The defendant, however, contends that the clause is an exception to the general liability assumed by the insurance company, and that, therefore, it was for the insured to show that the loss did not come within the terms of the exception.

"The general rule is well expressed by Earl, J., in *Slocovich* v. *Insurance Company*, 108 N. Y. 56 (14 N. E. 802):

"'Where there is an insurance against a loss by fire, and it is proved or admitted that the property insured has been destroyed by fire, the loss is brought literally and exactly within the terms of the policy. If, in such a case, the insurance company claims to be exempt from paying the sum insured, because there has been a breach of some condition contained in the policy, or the violation of some obligation or duty imposed upon the insured by the law or contract, the burden rests upon it to establish the facts which it thus relies upon as a defense to the claim under the policy.'

"The diligence of counsel has presented a long array of authorities bearing upon this assignment of error. The question has been expressly decided in accordance with defendant's contention in *Pelican Ins. Co.* v. *Troy Co-op. Ass'n*, 77 Tex. 225 (13 S. W. 980), and *Phœnix Ins. Co.* v. *Boren*, 83 Tex. 97 (18 S. W. 484), and in accordance with plaintiff's contention in *Transatlantic Fire-Ins. Co.* v. *Bamberger*, (Ky.) 11 S. W. 595, in *Blasingame* v. *Insurance Co.*, 75 Cal. 633 (17 Pac. 925), and in *Insurance Co.* v. *Crunk*, 91 Tenn. 376 (23 S. W. 140).

"In the Texas case the policy contained the following provisions:

" '(1) This company shall not be liable for any loss or damage by fire caused by means of hurricane.

" '(2) If the building shall fall, except as the result of fire, all insurance of this company on it or its contents shall immediately cease and determine.'

"The fire occurred during or immediately following a severe hurricane, which at least partially blew the house down, and there was evidence tending strongly to show that the fire had its origin in the breaking of a lamp by falling timbers. The court held:

" 'The provisions of the policy above noticed are exceptions to the general liability assumed by appellant, and the petition should have averred that the fire did not occur from one of the excepted causes. This was necessary to show a cause of action, for the company did not insure against loss resulting from a fire caused by a hurricane, nor were its policies binding at all for a loss caused by fire occurring after the fall of the house, unless the fall was caused by fire.'

"In the Kentucky case the policy contained this clause:

" 'This company shall not be liable under this policy for loss and damage if the building herein described, or any part thereof, fall, except as the result of fire.'

"The jury were instructed that defendant was not liable for any loss or damage, if the building fell, unless the fall was the result of fire, and that:

" 'The burden is upon the defendant to show by the evidence that the building, or such part thereof as fell, * * * did not fall as the result of fire; and unless the jury believe from the evidence that the said building, or such part thereof as fell, did not fall as the result of fire, they should find for the plaintiffs.'

"These instructions were approved by the appellate court.

"In the California case the policy provided that the company should not be liable for 'loss caused by the falling of any building insured or containing property insured by this policy, or by fire ensuing therefrom.' The complainant alleged that all of the property was totally destroyed by fire, but it was not alleged that the loss was not caused by any of the excepted causes. The complaint was demurred to on the ground that it contained no such allegation, and the demurrer was overruled. On appeal the supreme court sustained the judgment overruling the demurrer, saying:

"'One seeking to recover on an insurance policy must aver the loss, and show that it occurred by reason of a peril insured against; but he need not aver the performance of conditions subsequent, nor negative prohibited acts, nor deny that the loss occurred from the excepted risks.'

"In the Tennessee case the policy provided that:

"'If the building, or any part thereof, fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease.'

"The defendant demurred on the ground that there was no averment in the declaration that the building insured, or any part thereof, did not fall except as the result of fire. The demurrer was overruled, and the supreme court, affirming such decision, says:

"'It is not necessary that it should have averred the performance or nonperformance of conditions subsequent, nor to have negatived prohibited acts or excepted risks.'

"The burden of proof has been held to rest upon the defendant under other similar clauses of fire policies; *i. e.*, clauses restricting in some way the liability of the insurer. So, where it was provided that the policy should be void in the event of the insured effecting additional insurance ( *Clark* v. *Insurance Co.*, 9 Gray, 148; *Russell* v. *Insurance Co.*, 84 Iowa, 93 [50 N. W. 546]); also where it is provided that the policy should be void if the property was allowed to remain vacant beyond a limited time ( *Bittinger* v. *Insurance Co.*, 24 Fed. 549); where there was a provision that the policy was executed by the agent and delivered to the insured upon the condition that it should

not become effective until it was approved by the home office ( *Young* v. *Insurance Co.*, 59 Conn. 41 [22 Atl. 32]); and where it was provided that the company should not be liable to make good any loss or damage by fire which might happen or take place by means of any invasion, insurrection, etc. (*Portsmouth Ins. Co.* v. *Reynolds*, 32 Grat. 613).

"A clause to the effect that the insurer should not be answerable for loss by fire which should happen by any explosion is referred to in two cases cited by defendant (*Hayward* v. *Insurance Co.*, 7 Bosw. 385, 2 Abb. Dec. 349, and *St. John* v. *Insurance Co.*, 1 Duer, 371, 11 N. Y. 516) as 'an exception to the general language of the previous clause, by which they promise to make good such loss or damage as shall be occasioned by fire.' But the point here raised was not before the court. It was conceded in both cases that the fire was the result of an explosion, and the word 'exception' is used in the opinions evidently not in its technical sense, as contrasted with 'conditions,' but as a convenient way of expressing the fact that the insurer under such a policy would not be liable for all losses by fire. This seems clearly indicated by the sentence from 11 N. Y. 518:

"'Hence a loss occasioned by invasion, insurrection, riot, and the like, has usually been found excepted in such policies; and, although in this, and perhaps in policies generally, the exception in this respect is in terms of losses by fire, the clause would be equally definite and intelligible if those words were omitted in the clause stating the exception.'

"The academic distinction between an exception and a proviso is thus stated in Bouvier, Law Dict.:

"'An exception exempts absolutely from the operation of an engagement or an enactment; a proviso defeats their operation conditionally. An exception takes out of an engagement or enactment something which would otherwise be part of the subject-matter of it; a proviso avoids them by way of defeasance or excuse.'

"It may not be always easy to apply this distinction in practice (witness the conflicting decisions *supra*), but no especial help to the solution of the problem is to be derived from cases holding, as do some of those cited on the brief, that, when the insurance is against 'perils of the sea,' the burden is upon the insured to show that such perils caused the loss; or that where insurers engage to be responsible

for partial loss only if it amounts to five per cent., or the ship be stranded, the insured must show loss to the specified percentage, or that the ship was stranded; nor that, under bills of lading providing that the carrier should not be liable for loss by fire while in transit, plaintiff, if he seeks to recover for a fire resulting from the carrier's negligence, must show that negligence affirmatively; nor that, under a policy insuring against injuries effected through external, violent, and accidental means, the burden is upon the plaintiff to show from all the evidence that the death was caused by external, violent, and accidental means. *Baker* v. *Insurance Co.*, 12 Gray, 603; *Paddock* v. *Insurance Co.*, 104 Mass. 521; *Union Ins. Co.* v. *Shaw*, 2 Dill. 14 (Fed. Cas. No. 14,366); *The Neptune*, 6 Blatchf. 193 (Fed. Cas. No. 10,118); *Whitworth* v. *Railway Co.*, 87 N. Y. 413; *Kaiser* v. *Latimer*, 9 App. Div. 37 (41 N. Y. Supp. 94); *Claflin* v. *Meyer*, 75 N. Y. 260 (31 Am. Rep. 467); *Lamb* v. *Transportation Co.*, 46 N. Y. 271 (7 Am. Rep. 327); *Travellers' Ins. Co.* v. *McConkey*, 127 U. S. 661 (8 Sup. Ct. 1360).

"A pertinent case cited on the brief of plaintiff in error is *Sohier* v. *Insurance Co.*, 11 Allen, 336. The policy in that case insured Sohier, in the language of the opinion,—

"'Against loss or damage by fire to the amount of *$2,500 on his brick and slated building known as the "National Theater,"* situate on Portland street, Boston, Mass. This policy not to cover any loss or damage by fire which may originate in the theater proper.'

"Some provisos against liability for loss by fire which happens by invasion, riot, and the like, are in a later part of the policy. The clause in italics is written in the policy, the rest of the parts quoted being printed. The opinion proceeds (the italics *infra* being our own):

"'The first question raised by the bill of exceptions is whether the burden of proof was on the plaintiff to show a loss by fire which did not originate in the theater proper. This depends upon the construction given to the clause, "This policy not to cover any loss or damage by fire which may originate in the theater proper." If that clause can be regarded as a *proviso*,—that is, *a stipulation added to the principal contract, to avoid the defendants' promise by way of defeasance or excuse*,—then it is for the defendants to plead it in defense and support it by evidence; but if, on the other hand, it is an exception, so that the promise is only to perform what remains after the part excepted is taken away, then the plaintiff must negative the exception to establish a cause of action. It is not always

easy to determine to which class—whether of provisos or excep-
tions—a particular stipulation belongs; and *this one is certainly
very near the line.* But, after a careful consideration, the court
are of opinion that this was an exception to the subject of the con-
tract; that it put the burden of proof on the plaintiff. * * * The
qualification of the contract to which the parties agreed *is* not
inserted with any technical formality or precision. But *it is found
between the statement of what is insured and the promise to pay in
case of loss, in close connection with, and qualification of, the descrip-
tion of the subject-matter* of the insurance. *The provisos are set
forth together in a different part of the instrument.* It thus seems
to be a direct limitation of the risk against which insurance is
effected. The difference would only be a formal one, if, instead of
the phraseology actually used, the language of the policy had been,
"do insure against loss or damage by fire not originating in the
theater proper." It would illustrate the operation of the phrase in
question, and show its effect as an exception, if we suppose it
applied to the building insured. If the clause in the policy had
been, "This policy not to cover any loss or damage by fire to the
part of the building used as a theater proper," * * * this would
manifestly have been an exception from the subject-matter of the
insurance. And it is in like manner an exception to the risks taken
by defendants, *when, in the same part of the policy in which they
insure the risk of fire, and in the same connection,* they state, in sub-
stance, that it is only fire which does not originate in the theater
proper against which they insure.'

   "A similar question has been before the courts in actions
upon policies of life insurance, where the contract sued
upon contained a clause that it was to be void if insured
died of a disease induced or aggravated by intemperance,
or was to be null and void if he should die in, or in conse-
quence of, a duel, or in violation of the laws of any nation,
state, or province, or where the clause read, 'The self-
destruction of the person [insured], whether voluntary or
involuntary, and whether he be sane or insane at the time,
is not a risk assumed by the company in the contract.'
In each of these cases it was held that the clause contained
a condition, and that it was for defendant to show its
breach by a fair preponderance of proof. *Van Valken-
burgh* v. *Insurance Co.*, 70 N. Y. 605; *Murray* v.
*Insurance Co.*, 85 N. Y. 236; *Goldschmidt* v. *Insur-
ance Co.*, 110 N. Y. 628 (17 N. E. 871). And a sim-
ilar rule of construction has been applied in cases of acci-
dent insurance, where the contract provided that the in-
surance should not extend to cover accidental injuries or

death caused by fighting or voluntary exposure to unnecessary danger, nor while the insured was under the influence of intoxicating drinks.   See *Jones* v. *Accident Ass'n*, 92 Iowa, 652 (61 N. W. 485), where the court says:

" 'Not one of these conditions was to happen prior to the time the contract between the assured and the company should become binding.  *  *  *  The situation, then, is this: That there was a valid contract of insurance when the policy issued, but it might thereafter, upon the happening of some of these conditions, cease to be enforceable.  *  *  *  They were each and all matters of defense available to the defendant, but, not constituting a part of the plaintiff's case, the burden did not rest upon him either to plead or prove the absence of them in the first instance.'

"And in *Coburn* v. *Insurance Co.*, 145 Mass. 226 (13 N. E. 604), where there was a similar ruling, the court uses this language:

" 'Stipulations added to a principal contract, which are intended to avoid the defendant's promise by way of defeasance or excuse, must be pleaded in defense, and must be sustained by evidence. They are in the nature of provisos.  Exceptions, which leave the defendant liable to perform that which remains after the part excepted is taken away, are to be negatived.'

"Some remarks of the court in *Freeman* v. *Insurance Co.*, 144 Mass. 572 (12 N. E. 372), are most pertinent to the case at bar.   The policy insured against bodily injuries 'effected through external, violent, and accidental means, within the intent and meaning of this contract, and the conditions hereunto annexed.'   After the principal clause followed five provisos and eight conditions.   The second proviso was, ' *Provided*, always, that this policy is issued and accepted subject to all the provisions herein contained or referred to.'   The third proviso was, ' That this insurance shall not extend to any bodily injury  *  *  * when  *  *  *  injury may have happened in consequence of  *  *  *  voluntary exposure to unnecessary danger.' The first condition was, ' The party insured is required to use all due diligence for personal safety,' etc.   The last condition provided, 'The provisions and conditions aforesaid, and a strict compliance therewith during the continuance of this policy, are conditions precedent to the making of this contract.'   The question presented on appeal was whether the burden of proof was on the plaintiff to show that the insured used 'all due diligence for personal safety and protection.'   The court says:

" 'The rule of pleading in declaring upon a contract which contains an exception, or a proviso, or a condition, is stated in *Com.* v. *Hart*, 11 Cush. 130, 134, as follows:

" ' "If such instrument contain in it, first, a general clause, and afterwards a separate and distinct clause which has the effect of taking out of the general clause something that would otherwise be included in it, a party relying upon the general clause, in pleading, may set out that clause only, without noticing the separate and distinct clause which operates as an exception; but, if the exception itself be incorporated in the general clause, then the party relying on it must, in pleading, state it, together with the exception."

" 'It is a general rule of the law of evidence that it is necessary for a party to prove the substantive facts which he is required affirmatively to aver in his pleading.

" 'It is true that the policy in the case at bar only insures against bodily injuries effected by the means described "within the intent and meaning of this contract, and the conditions hereunto annexed;" but this does not change the nature of the conditions. They still take effect as conditions, and the insertion of these words in the principal clause of the contract does not vary the legal effect of the contract. The condition we are considering is essentially an executory stipulation, in the form of a condition, that Murray shall use all due diligence for his personal safety and protection, and it is the breach of this condition by Murray which the defendant sets up as a defense. We are not aware that it has ever been held that the introduction of the words we have quoted, or of other similar words, into the principal clause of a policy of insurance, incorporates into this clause the conditions of the policy, within the meaning of the rule of pleading we have stated; and in some of the decisions where it has been held that the defendant must plead, or that the burden of proof was on him to show, that a representation was false, or that a stipulation contained in a condition had not been complied with, the policy contained these or similar words in the principal clause. * * * In an action upon a policy which contains many provisos and conditions, there is a practical wisdom, which courts have recognized, in compelling the insurance company to allege and prove the want of compliance with any particular proviso or condition on which it relies.'

"Examined in the light of these authorities, the clause providing what shall happen in the event of a fall is not difficult of construction. It is not in that part of the policy which insures the risk, nor 'in close connection with, and qualification of, the description of the subject-matter of the insurance,' but is placed with the other provisos, in a different part of the instrument. The mere location of

the clause is, of course, not controlling, but it has been considered as of some weight in several of the cases cited *supra.* Nor is it to be construed as if it were removed from its position among the provisos, and incorporated with the clause descriptive of the subject-matter, by the mere use of the words, 'except as hereinafter provided.' To give these words such an effect would be to incorporate with the descriptive clause all the provisos as to loss caused directly or indirectly by riot or invasion, or by neglect of the insured, or by explosion or lightning, or where there has been other insurance (not notified to company), or where manufacturing is carried on after 10 p. m., or the building stands vacant, etc. The overwhelming weight of authority, as will be seen from the citations *supra,* is opposed to any such construction.

"The most important element, however, in determining whether a particular clause expresses a condition or an exception, is the nature of the clause itself. What does this particular clause mean, 'If a building, or any part thereof, fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease?' Manifestly, it does not merely provide that the insurer will not be liable for the particular variety of loss by fire which results from a fall. It stipulates for very much more, viz., that the contract, which it is expressly provided shall normally continue for a year, shall, in the event of a fall, absolutely cease and determine, so that, if a fall shall take place which in no way injures the property insured, and it be thereafter destroyed by fire happening otherwise than by fall or from prohibited causes, the insurer is nevertheless not liable, because an event has happened which, by agreement of the parties, puts an end to the contract altogether. It is difficult to see how such a clause can be construed otherwise than as a condition subsequent.

"To the further argument that the words in the descriptive clause, 'while contained in brick building,' etc., made it necessary for the plaintiff to show that no fall had destroyed the integrity of the building, a sufficient answer is found in the brief of the defendant in error. A clause drawn expressly to cover the case of a building falling before a fire has been inserted in the contract, and it is to be assumed that the whole intention of the parties on that subject is expressed in such clause."

We cannot agree with defendant's counsel that the foregoing decision is inapplicable to the case at bar. It is true, in that case the fire happened at or about the time the building fell, and in this case the fire was not visible until one hour and ten minutes after its fall. Nevertheless, the fact that the property insured was destroyed by fire brought the loss within the terms of the policy, and, under the principle of that decision, placed upon the defendant the burden of proving a breach of a condition in the policy, relieving it from liability. Nor can we agree with them that the decision is contrary to the weight of authority. Defendant's counsel have brought to our attention no case which, in our judgment, has a material bearing on the question under discussion, which is not considered and discussed in the *Mohlman Case.* While they have been able to point out inaccuracies in the analysis of some of the cases in that opinion, they have shown no such inaccuracy as sensibly impairs its authority. We believe that its reasoning and its analysis of authorities, which we heartily approve, answers every objection raised by defendant's counsel to the question now under consideration.

5. The expert evidence complained of was of three classes:

(*a*) On the assumption that the loss was occasioned by an explosion, Morris Friedman, a witness for the plaintiff, was permitted to give an estimate of the proportion of the loss caused by fire and the proportion caused by the fall of the building. This testimony would have been serviceable to the jury in the event of their finding that explosion, and not fire, caused the building to fall, and in that event only. Since the jury found, as we have before indicated, that fire did cause the fall of the building, this testimony could not have been used or considered by the jury, and therefore its admission, if erroneous, which we do not undertake to determine, was not harmful.

(*b*) An experienced contractor and builder, introduced as a witness by the plaintiff, was permitted, in answer to

a hypothetical question detailing the method adopted to remodel and improve the interior of the said building, to state that he thought the construction was perfectly safe. Defendant's counsel objected and excepted because the question "does not state any facts sufficient to enable the witness to give an intelligent opinion; that it is not a subject for expert testimony; and on the ground that it is the very question which the jury is to pass upon in this case." It is now claimed that there were omitted from this question certain facts which should have been stated, and that it assumed some facts not proved. We think the court properly overruled the objections made, and it is useless to cite authorities in support of the proposition that no other objection can be made on the hearing in this court.

(c) Plaintiff was permitted to put before the jury the opinion of contractors and builders that a fire which burned off the ceiling joists or floor joists would occasion the fall of the building in the manner in which it fell, against the defendant's objection that "it is not a proper subject for expert testimony, and the witness is not qualified to give his opinion. It is immaterial and incompetent. It is the very question for the jury to determine. The question assumes facts which are not in evidence,—not shown by evidence." We do not think that the objection that the question assumed facts not in evidence is valid. If the jury believed plaintiff's testimony that, almost immediately before the building fell, a flame or blaze shot up from this part of the building, and that the method for remodeling the store was safe, they would be warranted in inferring that this fire had burned some part of the building which occasioned its fall. Whether that part were the joists referred to in these questions would depend upon many probabilities, the most important of which would be the tendency of their destruction to occasion said fall. This tendency was a proper subject for the testimony of experts familiar with the construction of the building, as these witnesses were. In our judgment, therefore,

this testimony was proper and helpful to the jury, and there was no error in its admission.

As we find no reversible error in the record, the judgment of the court below will be affirmed.

The other Justices concurred.