SOUTH TEXAS MORTGAGE CO. v. COE.
(No. 5273.)

(Court of Civil Appeals of Texas. Austin. March 11, 1914. Rehearing Denied April 29, 1914.)

1. CONTRACTS (§ 94*)—RESCISSION FOR FRAUD.
Fraud is ground for rescinding a contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. § 94.*]

2. CONTRACTS (§ 94*)—RESCISSION—FRAUD.
A verbal promise to do something in the future, which is a material inducement to the execution of a contract, and is relied upon by the promisee, is fraud, authorizing the rescission of the contract, if the promisor had no intention of fulfilling the promise when it was made.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. § 94.*]

3. EVIDENCE (§ 434*)—RESCISSION—FRAUD.
Fraudulent representations need not be embodied in the contract in order to be ground for rescission, notwithstanding that oral evidence is not admissible to vary the terms of a writing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. § 434.*]

4. EVIDENCE (§ 441*)—PAROL EVIDENCE VARYING CONTRACT—EXCEPTIONS TO RULE.
It is presumed that a written contract embodied the whole contract, and previous statements or representations of the parties cannot be brought into the contract by parol evidence, except where the contract consisted of distinct parts, only part of which was reduced to writing, or something was omitted by fraud, accident, or mistake, in which cases parol evidence is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

5. VENDOR AND PURCHASER (§ 214*)—LIABILITY OF ASSIGNEE.
The assignee of a land contract is not responsible for the promise of the vendor to the purchaser, unless it contracted to become so.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 436, 442–448; Dec. Dig. § 214.*]

6. CONTRACTS (§ 174*)—"EXCEPTION."
An exception is intended to take out of the contract that which would have been included in it but for the exception.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 765; Dec. Dig. § 174.*

For other definitions, see Words and Phrases, vol. 3, pp. 2538–2544; vol. 8, p. 7656.]

7. VENDOR AND PURCHASER (§ 50*) — CONSTRUCTION OF CONTRACT—DUTIES OF VENDOR.
A provision of a land contract that the vendor will not be responsible for any statements made regarding its property, except as stated in its printed literature or letters signed by its officers, left its liability for representations not contained in the contract the same as if the provision had not been inserted, so that it would not be bound to open and macadamize a certain street, though its printed advertisement stated that it would do so.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 81; Dec. Dig. § 50.*]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Suit by M. Coe against the South Texas Mortgage Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

J. W. Lockett and A. M. John, both of Houston, and M. E. Monteith, of Belton, for appellant. Jno. B. Daniel, of Temple, for appellee.

### Findings of Fact.

JENKINS, J. The Western Land Corporation was incorporated in 1907, with an authorized capital of $100,000, which was later increased to $500,000. In January, 1911, $377,000 of its capital stock had been paid up. The South Texas Mortgage Company was incorporated January, 1911, with an authorized capital of $300,000, of which $265,000 was paid up. Some, though not all, of the incorporators of the South Texas Mortgage Company had been associated with the Western Land Corporation. Prior to May, 1910, the Western Land Corporation had purchased a tract of land adjoining the city of Temple, and had laid the same off as an addition to Temple, known as the Laurel Heights addition. It entered into an agreement with appellee to sell to him certain lots in said addition, which agreement was evidenced by the following instruments:

"Agreement for Purchase of Lots in Laurel Heights, Temple, Texas.

"I hereby agree to purchase from the Western Land Corporation, subject to conditions on back hereof, lot No. 10, block No. 8, price $440.00, lot No. 11, block No. 8, price $340.00, as shown on their plat of Laurel Heights, an addition to the city of Temple, Texas, and agree to pay therefor the total sum of $780 as follows: $50.00 in cash with this application, and $20.00 on the 7th day of each succeeding month until the contract has been paid in full. The conditions on back of this application are hereby made a part of this contract. Name, M. Coe. Street. City of Gatesville, County Coryell, State of Texas.

"Date, May 7, 1910.

"I hereby certify that the purchaser signed this application.

      "Salesman, E. J. Terral.

"No. 23."

Back of contract:

"Conditions.

"(1) The Western Land Corporation agrees to charge me no interest on deferred payments under this contract.

"(2) In consideration of the waiver of all interest on the installment payments as mentioned above, I hereby agree to make all payments when due, and, should I fail to pay any installment for a period of thirty days after due (except in case of illness as provided in contract), I hereby agree to forfeit all previous payments to the Western Land Corporation as rental charges for the possession of the property from the date of my contract.

"(3) The Western Land Corporation will pay all taxes on this property until my contract is completed.

"(4) In case of my death before the completion of the installment payments under this contract, and satisfactory proofs of my death having been furnished to the company by my heirs, the Western Land Corporation will deliver to my legal heirs a warranty deed and abstract of title, without further payments on their part, provided my contract is in force at the time of my death, and all payments then due have been paid. I hereby certify that I am not seriously ill on the date of this application.

"(5) Should the lots selected by me be sold when this agreement reaches the office of the Western Land Corporation, I agree to select other lots, or to allow some one to select other lots for me, and allow this payment to apply thereon.

"(6) The Western Land Corporation will not be responsible for any statements made regarding its properties, except as stated in its printed literature or in letters signed by its officers.

"(7) Our salesmen are only authorized to collect the first payment on each lot, and all further payments must be made directly to the office of the company, except at the risk of the purchaser."

The Western Land Corporation executed and delivered to appellee its contract for deed, which reads as follows:

"Contract for Deed.

"Know all men by these presents: That the Western Land Corporation, a corporation created and existing under the laws of the state of Texas, with its principal offices and place of business in the city of Houston, county of Harris, in said state.

"For and in consideration of the sum of $50, to them in hand paid by M. Coe, of Gatesville, Texas, the receipt whereof is hereby acknowledged, and the agreement on his part to pay a further sum of $20 on the 7th day of each succeeding month until a total sum of $780 has been paid, the Western Land Corporation agrees that, upon the payment of the said sum of $780 in the manner and at the time above stated, they will execute and deliver to the said M. Coe a good and sufficient warranty deed and abstract of title to lot No. 10, block No. 8, size 50x140 feet, lot No. 11, block No. 8, size 50x140 feet in Laurel Heights, an addition to the city of Temple, Texas, as shown by the map thereof, which is recorded in the office of the county clerk of Bell county, in the state of Texas.

"The purchaser above named is entitled to the following benefits under this contract according to the conditions named herein:

"(1) Should the above-named purchaser die before the installment payments herein mentioned are completed, the Western Land Corporation will, upon the receipt of satisfactory proof of death, deliver to the legal heirs of the purchaser, without further payments, a warranty deed and abstract of title, provided that at the time of purchaser's death said purchaser is then the owner of this property, and all payments due up to that time shall have been paid. Should purchaser be seriously ill at time of signing application for purchase, this clause shall not be binding upon this company.

"(2) The Western Land Corporation agrees to pay all state and county taxes on this property until the installment payments are completed.

"(3) The Western Land Corporation agrees to carry this contract in full force for thirty days after payment is due, and in case of illness will carry this contract for six months on certificate from practicing physician and the payment of a fee of 50 cents per month on each lot.

"(4) The Western Land Corporation will not charge any interest on the deferred payments under this contract.

"(5) In accordance with agreement signed on the 7th day of May, 1910, by the purchaser above named, which agreement is made a part hereof, the said purchaser agrees, in consideration of the waiver of all interest charges on the deferred payments, that he will make all installment payments when due, and, should default be made in the payment of any installment for a period of thirty days after due, except in case of illness, as stated in clause 3, then all previous payments shall be forfeited to the Western Land Corporation as rental charges for the possession of above-named property from date of this contract, and this contract for deed shall be null and void thenceforth. The above-named purchaser shall in that event be likewise relieved from all responsibility under this contract.

"In witness whereof, the said the Western Land Corporation has caused these presents to be signed by its president, and its corporate seal to be affixed and attested by its secretary, this the 12th day of May, A. D. 1910.          C. S. Woods, President. [Seal.]
          "J. F. Minton, Secretary. [Seal.]
"[Seal of the Western Land Corporation.]"

Subsequent to the execution of said contract the South Texas Mortgage Company purchased from the Western Land Corporation the land comprising said Laurel Heights addition, and assumed all of its written contracts in relation thereto. Subsequent to such purchase appellee filed suit against appellant, alleging, among other things, that, as an inducement for him to enter into the contract with the Western Land Corporation for the purchase of said lots, it promised that it would, at the earliest possible moment, and at its own cost and expense, open Sixth street of the city of Temple from its then terminus, and would macadamize same to and through said addition. Prior to the sale to appellee, the Western Land Corporation had advertised in a Temple paper that it would, open and macadamize Sixth street, as alleged by appellee. Appellee had read this advertisement, and relied on said promise. The opening of said street and macadamizing same would have materially enhanced the value of the lots contracted for by appellee, and, but for the representation that the same would be opened and macadamized in a reasonable time, appellee would not have entered into the contract to purchase said lots.

There is a tract of land between the terminus of Sixth street and Laurel Heights addition, which neither the Western Land Corporation nor the appellant have ever owned. Sixth street has never been opened through said tract of land, and no part of Sixth street in Laurel Heights addition has been macadamized.

The jury found that the Western Land Corporation never at any time intended to comply with its promise to open and grade Sixth street, and the evidence is sufficient to sustain this finding. The Southern Mortgage Company knew, at the time it took over Laurel Heights, that the Western Land Corporation had advertised that it would open and macadamize Sixth street.

Appellee complied with his contract until he had paid the sum of $370 on said contract, when he refused to make any further payments, unless appellant would open and grade Sixth street, and, upon its failure to do so, elected to treat said contract as forfeited, and filed this suit to rescind said contract and recover the money so paid by him, with legal interest thereon. Judgment was rendered in accordance with said prayer.

There were other allegations as to failure to grade streets and put down cement sidewalks, upon which the evidence is not so strong in appellee's favor. Also an allegation as to said Laurel Heights being incumbered with mortgages, which under the evidence we deem immaterial.

### Opinion.

[1-3] Fraud is ground for the rescission of a contract. Robinson v. Dickey, 36 S. W. 500; 6 Cyc. 286. A verbal promise to do something in the future, which is a material inducement to the contract, and which is relied upon by the promisee, that the promisor had no intention of fulfilling at the time he made the same, is fraud in law, and is sufficient grounds for the rescission of the contract. Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Touchstone v. Staggs, 39 S. W. 189; Hodsden v. Hodsden, 69 Minn. 486, 72 N. W. 562; Read v. Chambers, 45 S. W. 742. Fraudulent representations or promises, in order to furnish grounds for rescission, need not be embodied in the contract. Ranger v. Hearne, 41 Tex. 260; Henderson v. Railway Co., 17 Tex. 576, 67 Am. Dec. 675; Davis v. Driscoll, 22 Tex. Civ. App. 15, 16, 54 S. W. 44.

[4] This does not contravene the rule that oral evidence is not admissible, to vary the terms of a written instrument. When a contract has been reduced to writing, it is presumed that it embodies the entire contract between the parties, and no previous statements, representations, or promises of the parties thereto will be permitted to be read therein by oral testimony as a part of the contract. Wooters v. Railway Co., 54 Tex. 294; Davis v. Driscoll, supra. The only exceptions to this rule are where the contract was in separate and distinct parts, and only a part thereof was reduced to writing (Rubrecht v. Powers, 1 Tex. Civ. App. 285, 21 S. W. 320), or where something which was intended to be inserted in the written contract was omitted by fraud, accident, or mistake (Bruner Bros. v. Strong, 61 Tex. 557). With the exceptions above stated, fraudulent representations or promises not embodied in a written contract, though they may be sufficient to furnish grounds for a rescission of the same, do not become a part thereof.

[5] This distinction is important in the instant case. This suit is not against the Western Land Corporation, which made the alleged fraudulent promise, but against the assignee of that corporation. The appellant is not responsible for the promises of the Western Land Corporation, unless it contracted to become so. It contracted to become responsible for the *written* contracts of the Western Land Corporation, but none other.

This brings us to the crucial point in this case, viz.: Was the agreement on the part of the Western Land Corporation to open and macadamize Sixth street a part of its *written* contract with appellee? Sixth street is not mentioned in either of the two instruments hereinbefore set out, and which together constitute the contract with appellee. The sixth clause of appellee's agreement to purchase reads as follows: "The Western Land Corporation will not be responsible for any statements made regarding its properties, except *as stated in its printed literature or letters signed by its officers*." The fifth paragraph of the agreement to sell makes the agreement to purchase a part thereof. The

printed advertisement of the Western Land Corporation contained the statement that it would open up and macadamize Sixth street. It is the contention of appellee that said sixth clause .of his agreement to purchase had the effect to read into and make a part of the written contract all of the material representations and promises made by the Western Land Corporation in its printed advertisements as fully as if the same had been specially set forth in such written contract. In other words, that the Western Land Corporation, in effect, promised *in writing* in said contract that it would be responsible for all statements regarding its properties made in its printed advertisements, and that being "responsible" for promises so made meant that it would fulfill such promises. If this contention is correct, the judgment of the trial court should be affirmed, if no other error appears of record; but, if not, the judgment should be reversed.

As we have seen, if the sixth clause, above set out, was omitted from the contract, the promise of the Western Land Corporation made in its printed literature, though fraudulent, and therefore grounds for rescission as against said corporation, would not have constituted a part of the written contract, and oral evidence would not have been admissible to incorporate them in and make them a part of the written contract. What was in the minds of the parties in inserting the sixth clause? What was its purpose? Had this sixth clause been omitted, the Western Land Corporation would have been responsible for all fraudulent statements made by it or its agents acting within the apparent scope of their authority. The Western Land Corporation had the right to contract with appellee that it would not be responsible for any such statments, in which event such prior statements, whether printed or oral, made by itself or its agents, would have been no defense to the enforcement of the written contract, nor would they have furnished any grounds for its rescission. This assumes, of course, that appellee willingly and knowingly contracted to waive his right to set up such previous statements in avoidance of the contract. Leaving off the exception in said clause, this is just what appellee contracted to do. Without such exception, the clause reads: "The Western Land Corporation will not be responsible for any statements made regarding its properties."

[6] It is not the office of an exception to create a contract, but to take out of a contract that which, but for such exception, would have been included in it. Austin v. Willis, 90 Ala. 421, 8 South. 95; Railway Co.

v. Robeson,.27 N. C. 393; Loveland v. Clark, 11 Colo. 265, 18 Pac. 548. "An exception exempts absolutely from the operation of an engagement or an enactment; a proviso defeats their operation conditionally. An exception takes out of an engagement or an enactment something which would otherwise be a part of the subject-matter of it; a proviso avoids them by way of defeasance or excuse." Friedman Co. v. Assurance Co., 133 Mich. 212, 94 N. W. 761.

[7] The exception in the sixth clause is, as to the matter therein referred to, as though said sixth clause had not been written in the contract. If it had not been written in the contract, the promises contained in the printed literature, but not embodied in the written contract, would not have been a part of the written contract. We think the evident purpose of said sixth clause was to relieve the Western Land Corporation against any alleged verbal representations, but to leave its legal responsibility just as it was without said clause. The opposite theory is plausible at first blush; but we do not think it is sound.

For the reason that we do not think that the promise to open and macadamize Sixth street was a part of the written contract, we reverse the judgment of the trial court and here render judgment for appellant.

We here take occasion to commend the attorneys for appellant for fairly stating every fact appearing in the record against their assignments of error and propositions thereunder, as required by rule 31 for the Courts of Civil Appeals. While this rule is not often flagrantly violated, it is not always complied with as fully as it should be.

Reversed and rendered.