JUDSON v. MANHATTAN FIRE & MARINE INSURANCE CO.

1. INSURANCE—EXPLOSION—BURDEN OF PROOF.
    In an action on a fire insurance policy, where defendant denied liability on the ground that the building was destroyed by an explosion, and that the fire resulted therefrom, the burden of proof was on the defendant to establish its contention.

2. SAME — WHETHER FIRE OR EXPLOSION CAUSED LOSS PROPERLY SUBMITTED TO JURY.
    Whether there was a fire in the building which caused an

As to effect of fall of building clause in fire insurance policies, see annotation in 32 L. R. A. (N. S.) 608; L. R. A. 1917F, 1065.

explosion, or whether the explosion occurred before the fire and independent thereof, *held*, properly submitted to the jury, under the evidence.

3. SAME—TRIAL—REQUEST TO VIEW PREMISES.

Plaintiff's request, in the presence of the jury, that they be allowed to view the premises, which defendant was compelled to oppose, because, it claims, the evidence of fire was impressively visible while other conditions indicative of the explosion were no longer visible, *held*, not prejudicial, where the request was refused, and especially in view of the fact that both parties had introduced pictures of the ruins which visualized the situation to the jury, and therefore it is difficult to conclude that defendant would have been prejudiced had the request been granted.

4. SAME—INSTRUCTION.

An instruction by the trial judge that "When I speak of a fire in the building preceding a possible explosion, if there was such," is not open to the objection that whether there was an explosion was submitted as a question of fact, whereas it was undisputed, in view of the fact that the judge was indicating what was meant by "fire," and intended to say "if there was such" a fire.

5. APPEAL AND ERROR—MISCARRIAGE OF JUSTICE.

Under 3 Comp. Laws 1915, § 14565, a case should not be reversed for error unless it resulted in a miscarriage of justice.

FELLOWS and CLARK, JJ., dissenting.

Error to Ingham; Carr (Leland W.), J. Submitted April 11, 1928. (Docket No. 105, Calendar No. 33,677.) Decided July 24, 1928.

Assumpsit by Nathan Judson against the Manhattan Fire & Marine Insurance Company on a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*Walters, Hicks, Carmichael & Head,* for appellant.

*A. M. Cummins,* for appellee.

North, J.   The plaintiff was the owner of a two-story brick building in the city of Lansing on which he was carrying fire insurance in the defendant company.   The building was totally destroyed between 4 and 5 o'clock in the morning, March 27, 1927.   The plaintiff brought suit on the policy claiming the loss was caused by fire.   Payment was resisted by the defendant on the ground that the building was destroyed by an explosion.   This issue was, submitted to the jury, the plaintiff recovered, and the defendant has appealed.

The principal question is presented by the defendant's contention that a verdict should have been directed in its favor.   The policy contained the following provisions:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring. . . .by explosion or lightning, unless fire ensue, and in that event, for loss or damage by fire only.   *   *   *

"If a building or any material part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

It is the claim of the defendant, that the plaintiff offered absolutely no evidence to refute defendant's testimony with reference to the explosion and fire. We think this assertion is not sustained by the record. The burden of proof was on the defendant to establish its contention.   See *Western Assurance Co.* v. *J. H. Mohlman Co.,* 28 C. C. A. 157, 83 Fed. 811 (40 L. R. A. 561), cited and quoted in *N. & M. Friedman Co.* v. *Assurance Co.,* 133 Mich. 212.   The insured building was approximately 40 feet wide and 100 feet long. The first floor and basement were occupied by a company which manufactured, bottled, and sold various beverages, and a dance hall was conducted on the

second floor, and above this was a low attic. A police officer testified that he visited the building four or five minutes before he heard the explosion. His investigation was such as to raise a strong presumption that there was no fire in progress at that time on the first floor or in the basement, otherwise it would have been observed or the smoke odor detected by the officer. However, a considerable fire, if confined to the second story or especially to the attic, might easily have escaped his attention. The same witness testified that he returned to the store in about one minute after the explosion, saw the building was all down, remained probably one-half to three-quarters of a minute, did not see any fire, went to a telephone to report, returned and "saw some flames coming up probably four or five minutes after the explosion."

William Lycos, who was a witness for the defendant, operated a restaurant in the same locality. He heard the explosion and saw the front wall of the building fall. He testified:

"All at once it seemed like it was a stroke and with it the light and I saw the building fall, and there was black smoke. I ran around (to my telephone) to call up the police station. As soon as I called the police station, I ran across the street towards the building. I was running. The only time I stopped was right there on the corner and I saw the fire. The fire was right in the center of the building. The walls of the building, when I got there, were almost down. The roof was out in the middle. The second floor was on the first floor, and the roof was still on top of that. When I observed the fire, it was quite big because the flames went toward the cottage, or the frame building. When I first saw it, it was a pretty good sized fire. It almost covered up the frame building—I mean the Jones' cottage. By the time I got out of Shiawassee street, the flames were like that. It was about a minute from the time I heard that noise until I got out to Shiawassee street. Not over a minute. Looked like—I could not explain it. It was kind of black

smoke, that was all probably.     It was rolling out quite a lot.     One black smoke, yes, so thick you could not see exactly where it was, you know.     The building fell and then the smoke came.

"Q. And the fire, as you saw it, was so large and fierce that you thought that Jones might be burned up?

"A. Yes, sir."

Another of defendant's witnesses who hurried to the scene from a nearby point immediately after hearing the explosion testified on cross-examination:

"I think after I turned into Shiawassee street, it was probably a minute before I saw any fire.     Then I did see some flame coming up from the building.     I could not say how much space that first flame seemed to occupy.     It seemed to shoot right up from underneath the roof.     It was my impression that the roof had broken in at that point.     It looked like it had broken so as to leave an opening in the roof.     It is my judgment that this fire was not on top of the roof, but was coming out of an opening under the roof, through a hole in the roof."

There is other testimony indicating that the fire was first noticed in what had been the upper portion of the building.     Plaintiff's theory is that there was a small fire in the upper part of the structure which finally ignited gases and caused the explosion and wreck of the building and that an explosion not preceded by a fire would not have been followed by such an almost instantaneous and intense conflagration. In view of the foregoing record, the defendant was not entitled to a directed verdict, but instead the trial judge was justified in submitting to the jury the question as to whether a fire caused the explosion and destruction of the building, or whether the explosion occurred before the fire and independent thereof.

Two other questions are presented:     In the presence of the jury the plaintiff requested the court to have the jury view the premises.     The defendant urges

that this request so made was prejudicial to it because the condition of the building was then such that the evidence of the fire was impressively visible; while other conditions which were indicative of the explosion, such as broadly scattered debris and broken windows in neighboring buildings were no longer visible. Defendant's counsel insist that in order to avoid this unfavorable view they were compelled to oppose the application and thus incurred the disfavor of the jury. The record does not sustain the contention that this resulted in prejudicial error. The request was made in the usual manner and does not appear to have been prompted by improper motives. It was not denied by the trial judge in the presence of the jury, though it was obviously refused, because the jury did not go to the premises. We may also add that each of the parties had introduced pictures of the ruins which visualized the situation to the jury and hence it is difficult to conclude that they would have been misled and the defendant prejudiced even if the request had been granted.

The remaining assignment of error relates to the charge wherein it is claimed the court submitted to the jury as a question of fact whether there was an explosion, whereas this was undisputed. The particular paragraph of the charge involved is as follows:

"When I speak of a fire in a building preceding a possible explosion, if there was such, I do not mean a fire in the furnace, if there was any fire in the furnace, but rather a fire that was actually then and there consuming some part of the structure or consuming some part of the contents of the building itself—fire in the structure."

Since this paragraph was clearly included in the charge for the purpose of definitely indicating to the jury what the court meant by referring to a *fire* in the building rather than relating to an explosion, we think

a fair construction leads to the conclusion that the court intended to say and did say to the jury: "When I speak of a fire in a building preceding a possible explosion, if there was such" *a fire,* etc.    The qualification was evidently inserted to avoid the prejudicial assumption that there was a fire in the building prior to the explosion.    If given this construction, the portion of the charge quoted is free from objection. But should we adopt the construction the defendant has placed on this portion of the charge and assume that the question of an explosion having occurred was thus inferentially left to the jury, we would hold that it was not prejudicial error under the record in this case.    3 Comp. Laws 1915, § 14565.

The judgment of the lower court is affirmed.

FEAD, C. J., and WIEST, McDONALD, POTTER, and SHARPE, JJ., concurred with NORTH, J.

CLARK, J. (*dissenting*).    Because of the conditions of the policy quoted by Mr. Justice NORTH, and under the uncontroverted evidence, defendant should have had verdict.

Judgment should be reversed without a new trial and with costs to defendant.

FELLOWS, J., concurred with CLARK, J.