BLICKLEY v. LUCE'S ESTATE.

1. LANDLORD AND TENANT — COLLAPSE OF BUILDING — LIABILITY OF LANDLORD.

Where a tenant's property is destroyed by the collapse of the building caused by the negligent making of alterations by another tenant under permission of the landlord, the landlord is liable for the damages.

2. SAME—NEGLIGENCE—EVIDENCE.

The collapse of a building during the making of repairs and alterations is, as to a tenant whose property is destroyed by such collapse, prima facie evidence of negligence on the part of the landlord.

3. TRIAL—ORDER OF PROOF—DISCRETIONARY RULINGS — REVIEW.

The order of proofs, and the permitting of testimony on rebuttal which is part of the original case, are, to a certain extent, matters of discretion, and do not justify reversal, except where such course deprives the complaining party of a fair trial or occasions a miscarriage of justice.

4. WITNESSES—CREDIBILITY—IMPEACHMENT—EVIDENCE.

In an action by a tenant against his landlord for damages for the destruction of property caused by the fall of the building followed by fire, the fact that he has brought suit against insurance companies on the theory that fire caused the fall, has no bearing on his credibility as a witness, it appearing that the question whether the fall was occasioned by negligence or fire was one respecting which he had no personal knowledge, and that it was necessary to bring suit to preserve his rights against the insurance companies in the event that the evidence should prove that the loss was due to fire. Per MC-ALVAY, C. J., and CARPENTER, BLAIR, and MOORE, JJ.

5. LANDLORD AND TENANT—COLLAPSE OF BUILDING—LIABILITY OF LANDLORD—NEGLIGENCE—EVIDENCE.

In an action by a tenant against his landlord for damages for the destruction of property caused by the collapse of the building during reconstruction, the fact that the work was entered upon without obtaining a permit as required by ordinance may be considered with the other evidence on the question of the landlord's negligence.

Error to Kent; Wolcott, J. Submitted February 18, 1907. (Docket No. 81.) Decided April 30, 1907.

· Christian Blickley presented a claim against the estate of Ransom C. Luce, deceased, for damages to a stock of merchandise caused by the collapse and burning of decedent's building. The claim was disallowed in the probate court, and claimant appealed to the circuit court. There was judgment for claimant, and contestants bring error. Affirmed.

*J. H. Tatem* and *G. A. Wolf* (*Jacob Kleinhans*, of counsel), for appellants.

*William H. Eastman* and *Albert Crane* (*Myron H. Walker*, of counsel), for appellee.

BLAIR, J. Claimant was a tenant of decedent under written lease of a portion of the Luce Block in Grand Rapids. His stock of crockery and glassware was destroyed by the destruction of the block during the night of July 17, 1901, due, as was alleged by claimant, to the collapse of the building, caused by the negligent making of repairs directed or permitted by decedent, followed by fire occasioned by the fall of the building.

Ransom C. Luce having died, claimant, in September, 1902, filed a claim for damages against his estate in the probate court, where it was disallowed. On appeal to the circuit court, a jury trial was had, resulting in a verdict for claimant for $24,940.32, substantially the value of the stock as shown by claimant's testimony. The record comes to us for review upon writ of error.

No issue was framed or pleading of any kind filed by contestants. The principal question of fact litigated was whether the building collapsed and caused the fire, as asserted by claimant; or whether the fire preceded and caused the collapse, as claimed by contestants. The repairs in question were being made for the benefit of N. & M. Friedman Company, who were also tenants of the

block and desired more room.   Certain changes having been made by Mr. Luce, the Friedman Company requested other and further changes.   Contestants allege, and there was evidence tending to prove, that Mr. Luce refused to make any further changes, but said that the company could have it done at its own expense, provided Mr. Robinson, the architect, said it was all right, and good men were employed.

The negligence alleged was as stated briefly by the circuit judge:

"That, in the making and suffering to be made of said alterations and changes, said Luce was negligent in that said alterations were made without the advice of competent architects, without proper plans and specifications, and without complying with the building ordinance of the city of Grand Rapids.   That incompetent and unskillful contractors and workmen were employed; that the work was done in an unworkmanlike and unskillful manner.   That the materials used in and about said work were too weak and insufficient for the purpose for which they were used, and were subjected to greater strains and weights than they were designed to bear, or reasonably could have borne.   That the building was not properly shored up or supported during the removal of portions of it.   That Luce, having notice of the weakened condition of the building before it fell, neglected to use proper efforts to support it.   That the weights in the building were redistributed by these alterations so that the partition wall between 70 and 72 Monroe street became overloaded, and that the weights on the structure were increased to an undue extent by said alterations and changes.   * * * That by reason of these alterations made as alleged, the building, as early as July 16, 1901, became dangerous.   It fell on the morning of July 18th.   That Luce knew it, and claimant did not.   That Luce should have warned claimant of such dangerous condition, and did not.   That if such warning had been given, claimant could and would have removed his goods and saved much of the loss subsequently incurred."

Several suits involving the cause of the destruction of this building have been before the courts, where it has been determined that the original cause of the destruction

was fire. *N. & M. Friedman Co.* v. *Assurance Co.*, 133 Mich. 212; *Phenix Ins. Co.* v. *Luce*, 123 Fed. 257; *Liverpool, etc., Ins. Co.* v. *N. & M. Friedman Co.*, 133 Fed. 713; *Greenwich Ins. Co.* v. *N. & M. Friedman Co.*, 142 Fed. 944, 200 U. S. 621. In July, 1902, claimant sued several insurance companies on policies covering his stock to the amount of $7,000, which suits are still pending. At the close of claimant's main case, contestants demurred to the evidence, for two reasons:

" 1. Because it appeared that the work at the time of the accident was done by a co-tenant of claimant through an independent contractor and therefore the owner cannot be liable.

" 2. Because there is no evidence of express negligence on the part of Mr. Luce."

A motion for a new trial was presented, and the following grounds specially relied on: *First*. Because the court erred in charging the jury as follows:

"As a general rule, in such case, the employer is not answerable for the negligence of the contractor in such case; but in this case, however, it appears that Mr. R. C. Luce was the owner of the block in which the reconstruction work was going on, and was the landlord of Mr. Blickley, who had a store in the same block. Under these circumstances, if you find by a fair preponderance of the evidence that this work was negligently planned, or negligently done, so that it left the structure or the wall where the work was being done in so weak or unsafe a condition that the building fell by reason thereof, then the owner of the building could not relieve himself of liability for the negligence of the contractor or his workmen.

" In other words, I instruct you that, where the relation of landlord and tenant is shown to exist, the landlord, during the continuance of that relation, owes to his tenant the duty of so handling the leased premises and the landlord's other adjoining premises, as that the tenant shall not without the tenant's knowledge and consent, by any act of the landlord's agents or others acting under the landlord's permission or authority, be evicted or disturbed in his possession of the leased premises, or his property therein damaged or destroyed.

"So, in this case, I instruct you as a matter of law that Mr. R. C. Luce, being the owner of the block and the landlord of Mr. Blickley, a tenant of the same block, his estate would be liable for the negligence of the contractor and the workmen, if there were negligence in doing this reconstruction work, both that work which Mr. Luce himself procured to be done, and also whatever further work was done by the Friedmans with Mr. Luce's knowledge, permission, and consent, if it was; provided you find from the evidence that there was negligence, either in the plan of doing this reconstruction work, or in the manner of doing it, or both, and that by reason of such negligence the building was rendered unsafe and insecure, causing it to fall on the night of July 17, 1901, and causing the destruction of claimant's property."

*Second.* Because the court erred in charging the jury as follows:

"His [Mr. Luce's] liability for unsafe and improper work, if there was any, and for overloading the walls, girders, and posts, if they were overloaded, is the same as though he had employed the men and personally superintended the work, if the same constituted negligence and the claimant's stock was destroyed thereby."

*Third.* Because the court erred in refusing to give defendant's sixth and seventh requests to charge.

*Fourth.* Because the court erred in stating the claimant's theory in certain respects and in not giving contestants' twenty-first, twenty-second, and twenty-eighth requests relating thereto.

*Fifth.* Because the court erred in charging the jury as follows:

"But that fact that he [Mr. Blickley] has brought suit against the insurance company, which suit is pending, is not a matter for your consideration in arriving at a verdict in this case. You have no responsibility for any case but this, and should not consider any other."

*Sixth.* Because the court erred in permitting the claimant on rebuttal to retry his principal case on the question of fire by recalling and re-examining his witnesses, Hammond, Gundry, Le Moine, Wells, Dean, Campbell, and others.

*Eighth.* Because the claimant and his counsel pursued an improper and prejudicial course to defendants' rights in the conduct of the trial by giving before the jury inadmissible testimony under the guise of an alleged rebuttal and impeachment in connection with the matters referred to in grounds 6 and 7 of this motion, etc.

*Ninth.* Because defendants were prejudiced by improper evidence offered by claimant by the witnesses, Hauser, C. W. Davidson, and others, as to alleged poor work in the original construction of the Luce building and the Puritan building, so-called, and because no charge was given to the jury on the subject.

*Tenth.* Because the court erred in permitting the claimant's witness, Adolph Leitelt, to testify that castings were ordered by Gulliford & Richens, without any evidence or proof that they were ordered by or for Mr. Luce; and that the court erred in denying defendants' motion to strike out the testimony so given.

*Eleventh.* That the claimant did not prove by a fair preponderance of the testimony that either the fall or the fire was caused by the negligence of Mr. Luce.

*Twelfth.* That the evidence as to the value of the stock of goods did not authorize a verdict for the amount found, and the verdict is largely excessive, and the defendants have discovered new evidence on the question of value.

*Thirteenth, Sixteenth.* That the verdict is against the weight of evidence, etc.

At the beginning of their argument, counsel for contestants say:

"The errors assigned, and which will be argued here, are the points above stated as furnishing the grounds for the motion for new trial, and one or two rulings on requests and evidence."

Counsel for contestants have distributed their argument in their principal brief under the following heads:

(1) Decedent's liability for Friedman's alleged negligence with respect to alterations made by the latter.

(2) Prejudicial conduct of claimant.

(3) Retrial of main case on rebuttal.
(4) Preventing attack on claimant's credibility.
(5) Specifications and building ordinance.
(6) Erroneous rulings on evidence.
(7) Excessive verdict.

1. Counsel argue under this head that:

" (a) Decedent was not affirmatively shown to have been guilty of negligence with respect to the work done by Friedman.

" (b) In the absence of proof of negligence on the part of decedent, he is not liable for any negligence of Friedman or of the latter's contractors or workmen.

" (c) The testimony shows beyond dispute that the architects and contractors employed by the Friedman Company were competent and experienced.

" (d) The relation between Gulliford & Richens to Mr. Luce was that of independent contractors. And the like relation existed between the Friedman Company and Gulliford & Richens. The entire work and the method of carrying it out was left entirely to the judgment of the contractors.

" (e) Decedent had no knowledge of any alleged acts of negligence of Friedman's contractors or the latter's employés.

" (f) There is no evidence of any negligence on the part of either Mr. Luce or Mr. Friedman in their personal conduct."

This is not a suit by one tenant against a landlord for damages suffered because of the negligence of another tenant of the same building in making the usual repairs of his part of the premises in consequence of the duty resting upon him to make them; nor for damages in consequence of the wrongful use of his part of the premises; nor for acts unknown to the landlord. This record presents a case of altering and reconstructing premises, work which the tenant had no right to perform at all without the permission of the landlord, which the landlord alone could do or authorize. In the first instance, the landlord took charge of the making of the alterations in the building himself. Having made such alterations as were at first contemplated, he turned over to the tenant the mak-

ing of the additional changes which he desired. The additional changes were as much made by authority of the landlord as the original changes. If the landlord had directed the tenant to make the repairs at the landlord's expense, in whole or in part, the men who carried out the work would have represented the landlord, whether they were independent contractors or not. The duty to so reconstruct the building as not to injure the plaintiff would be an absolute duty, resting upon the landlord, which he could not delegate to another, and thereby escape liability. *Wilkinson* v. *Spring Works*, 73 Mich. 405; *Peerless Manfg. Co.* v. *Bagley*, 126 Mich. 225; *Lauer* v. *Palms*, 129 Mich. 671 (58 L. R. A. 67); *Riley* v. *Simpson*, 83 Cal. 217 (7 L. R. A. 622); *Case* v. *Minot*, 158 Mass. 577 (22 L. R. A. 536). Whatever the rule might be as to a stranger, it can make no difference in principle as to plaintiff, who occupied under a covenant for quiet enjoyment, whether the expense of reconstruction was borne by the landlord or another acting by his authority. In either event, the invasion of plaintiff's possession would be due to the authority of the landlord, who had agreed to protect it, and, in either event, the landlord should be held liable for the negligent execution of the work, the result of which, directly attributable to the authority of the landlord, was an eviction of the tenant. *Coulter* v. *Norton*, 100 Mich. 389. Excluding fire as a cause for the fall of the building, such fall, under the circumstances of this case, was prima facie evidence of negligence. *Barnowsky* v. *Helson*, 89 Mich. 523 (15 L. R. A. 33); *Huggard* v. *Refining Co.* (Iowa), 109 N. W. 475. Apart from the inference which might properly be drawn from the collapse of the building in process of reconstruction, there was abundant evidence of negligence for the consideration of the jury.

2, 3. The only occurrences during the trial, lasting from October 3d to November 3d, which might form the basis of a charge of prejudicial conduct on the part of claimant, are wholly unsupported by exceptions taken on the trial, and generally without formal objections. The argu-

ment for a reversal is predicated upon exceptions to the refusal to grant a new trial. Even if we disagreed with the circuit judge in his conclusion that these occurrences were not prejudicial to contestants, which we do not, we should not be inclined to overrule his exercise of his discretion under such circumstances. The order of proofs and the permitting of testimony on rebuttal which was part of the original case are, to a certain extent, matters of discretion, and do not justify a reversal, except where such course deprives the complaining party of a fair trial or occasions a miscarriage of justice. We think that contestants were afforded an eminently fair trial and have no just cause for complaint.

4. It is said under this head:

"One of the most palpable errors of the court was in refusing to give contestants' request No. 27, and removing from the consideration of the jury the action of claimant in suing the insurance companies."

Request No. 27 was as follows: .

"And you may also in considering Mr. Blickley's testimony take into account the fact that he has sued the insurance companies, claiming that the building was destroyed by fire."

Claimant testified:

"I commenced suit simply to protect my interests. * * * I found the policies stated that if there was any fire loss the companies must be notified within 60 days and I so notified them. At that time I did not know what I found out later.

"Q. Now, further than that, there is a provision in your policies that suit must be brought within one year.

"A. To keep the policy alive; yes, sir. That was the main reason for commencing suit."

Counsel say in their argument:

"The question of valuation was a difficult one to meet, under the circumstances, and we were entitled to question claimant's credibility by all fair means. * * *

"The insurance suits by third persons were not proper to be considered here, and as far as the charge of the court
148 MICH.—16.

covered those cases, it was no doubt correct. But the court went further and took from the jury's consideration the action of claimant in suing his companies and assuming an inconsistent position.    *    *    *

"The court had admitted evidence of the suits to be introduced and claimant himself attempted to explain his reasons therefor. We had the right to question Mr. Blickley's credibility both on account of his interest, and on account of his inconsistent position. The following had taken place when claimant testified on his main case:

"'Redirect: Q. Why did you commence suits against the insurance companies when you did?

"'Mr. Tatem: That is objected to.

"'The Court: I rather think the whole matter is immaterial. In what way do you claim it is material to show that any suits were begun?

"'Mr. Wolf: To show the inconsistent position.

"'Mr. Tatem: To show that he proceeded against the fire companies on the supposition that there was a fire in the building and that the companies would be liable. If the building collapsed, they would not be liable. Now, there is the act of the party to this suit, and everything he says or does is admitted. Now, we claim that at that time he was looking to the fire companies for his damage.

"'The Court: If it is material at all, the inference that is sought to be drawn from it, I think the question now asked by the claimant is proper, if the other is to stand. I am inclined to let the testimony stand under the claim of counsel, what they claim for it.'

"After warning the jury about considering the results of the insurance cases, the court below called attention to the amount of claimant's insurance. And in that connection he made the following charge:

"'You may consider the amount of the claimant's insurance as bearing upon the value of his stock of merchandise. But that fact that he [claimant] has brought suit against the insurance company, which suit is pending, is not a matter for your consideration in arriving at a verdict in this case. You have no responsibility for any case but this, and should not consider any other.'

"We submit this error in refusing to give this request was harmful to contestants and entitles them to a new trial."

The insurance policies were not put in evidence, nor any proofs of loss on the part of claimant, nor the files in

the suits against the companies.  All that appeared was that claimant had sued some insurance companies on policies aggregating $7,000, which was the total amount of insurance.  In the absence of evidence as to the proofs of loss and declarations in the suits, the jury could not be instructed to infer, from the fact that a standard form of policy is prescribed by statute, that the proofs of loss and declarations contained appropriate charges to enforce liability on such a policy and, therefore, might be considered as bearing upon the consistency of claimant's conduct and the credibility of his testimony.  We, therefore, are of the opinion that the request was properly refused.

5. Contestants' twenty-first, twenty-second, and twenty-eighth requests, which were refused, were as follows:

"(21) The fact that no formal written building permit was issued by the building inspector for the second work is no evidence of negligence.  The question to be determined is whether there was in fact negligence on the part of Mr. Luce.

"(22) The fact that no new plans were made for the second girder construction, is in itself no evidence of negligence.  The question as before stated being whether in fact there was negligence on the part of Mr. Luce.

"(28) The evidence shows that no further specifications for the changes in question were necessary in this instance than was had here, and therefore you cannot find Mr. Luce guilty of negligence in this respect."

Section 2 of the building ordinance is as follows:

"SEC. 2.  When any person or corporation shall be desirous of erecting, constructing, or repairing any building or buildings within the fire limits of said city, or any public building, public hall, concert room, theatre, church, school-house, lodge room, armory, factory or warehouse, or any building where people habitually convene for religious worship or amusement, he or they shall make application at the office of the building inspector for a permit for that purpose, and shall be required to furnish and deposit permanently in the office of said inspector a written statement of the proposed location and the estimated cost and the contract time for the completion of the work, together

with a 'blue print' copy of the plans, and general drawings of the structure, and also a true copy of the specifications. After the inspection of the proposed location and the plans and specifications, the building inspector shall issue within ten days from the time of the receipt of the same to said applicant or applicants a permit for the erection of the proposed structure, providing everything relating to said structure is in compliance with the provisions of this and other existing ordinances."

The violation of the ordinance was not in itself negligence which would justify a recovery or upon which an action could be based. *Cook* v. *Johnston,* 58 Mich. 437; *Flater* v. *Fey,* 70 Mich. 644; *Sterling* v. *City of Detroit,* 134 Mich. 22; *Taylor* v. *Railroad Co.,* 45 Mich. 74.

But it does not follow that the violation of the ordinance under the circumstances of the case was no evidence at all of negligence. The parties engaged in the work of reconstruction understood about the ordinance and a permit had been secured for doing the first part of the work, and plans and specifications filed as required. The fact that no attempt was made to comply with the provisions of the ordinance in entering upon the execution of the second part of the work might properly be considered with the other evidence in determining the question of negligence. But even if violation of the ordinance was no evidence of negligence, the request was too broad, since it required the court to charge that the inquiry as to negligence was limited to the personal negligence of Mr. Luce. This consideration applies also to the other two requests. We think, also, that, under the charge of the court, contestants could not have been prejudiced by the failure of the court to give these requests. The court repeatedly stated what facts would constitute negligence, and at no time did he specifically mention the failure to obtain a permit or to file plans and specifications as among such facts.

6. We have examined the alleged erroneous rulings, and are satisfied that no reversible errors were committed in the respects claimed.

7. In giving his reasons for denying the motion for a

new trial, on the ground of excessive damages and newly discovered evidence, the circuit judge assigned as such reasons the following:

"Because in the judgment of the court the evidence as to value of stock of goods authorized the verdict found, and the same is not largely excessive, as specified in reason numbered twelve of said motion; and because the alleged newly discovered evidence of the contestant upon the question of value is not clear and definite, or of sufficient importance and materiality to warrant a new trial, nor has the contestant shown reasonable diligence in discovering and presenting the same."

We concur in this finding. The value of the stock was proved by an inventory, supported by the testimony of claimant and his clerks, and was substantially undisputed. The showing of diligence was not sufficient. *Canfield* v. *City of Jackson,* 112 Mich. 120.

We also agree with the finding of the circuit judge that the verdict was not against the weight of the evidence.

The judgment is affirmed.

CARPENTER, J. I am not satisfied with the reasoning of Justice BLAIR, in the fourth subdivision of his opinion. I agree with him, however, that the circumstance that claimant had sued the insurance companies had no bearing upon his credibility. My reasons for that conclusion are these: The question of whether the fall of the building was occasioned by negligence or by fire was one respecting which claimant had no personal knowledge. As shown by the opinion in *N. & M. Friedman Co.* v. *Assurance Co.,* 133 Mich. 212, there were facts which warranted either inference. Under these circumstances, it was simply prudent conduct for the claimant to preserve his rights against the insurance company in the event that the evidence should prove that his loss was due, not to negligence, but to fire. To preserve those rights he was compelled, as shown by the opinion of Justice

BLAIR, to sue the insurance companies. I see no legitimate reason for saying that that circumstance affects his credibility.

Except as above stated, I concur in the opinion of Justice BLAIR.

McALVAY, C. J., and MOORE, J., concurred with CARPENTER, J.

HOOKER, J. I concur in the opinion of Mr. Justice BLAIR, upon all points but one. In my opinion the court should have given defendant's request numbered 27, and that he should not have said to the jury that " the fact that he [claimant] has brought suit against the insurance company, which suit is pending, is not a matter for your consideration in arriving at a verdict in this case." It is highly improbable, however, that the result was any different than it would have been had the request been given, and the language quoted omitted.

I therefore concur in affirming the judgment.