## MOLLICA v. MICHIGAN CENTRAL RAILROAD CO.

1. NEGLIGENCE—RAILROADS—CONTRIBUTORY NEGLIGENCE.

   A bright and intelligent boy, nearly ten years old, who was killed by an approaching train, in the day time, while he was standing on the track watching a passing train on a parallel track, and waving his hands at the passengers or throwing missiles at the cars, was guilty of contributory negligence.

2. SAME—ORDINANCE—SPEED OF TRAIN

   While the violation of an ordinance of a city regulating the speed of a train within the municipality, is evidence of negligence, it is not, standing alone, negligence which would justify a recovery.

3. SAME—GROSS NEGLIGENCE.

   Although the engineer of the train which killed decedent saw him approaching the track 12 or 15 feet away, but did not check his engine, thinking that the boy would not step on the track, until he was about to go upon the rails, there was no evidence of gross negligence, where the engineer testified that as soon as he saw the danger he attempted, at once, to stop the train.[1]

Error to Calhoun; North, J. Submitted January 26, 1912. (Docket No. 94.) Decided May 3, 1912. Rehearing denied June 1, 1912.

Case by Angelo F. Mollica, administrator of the estate of Vincent Mollica, deceased, against the Michigan Central Railroad Company for the negligent killing of decedent. A judgment for defendant on a verdict directed by the court, is reviewed by plaintiff on writ of error. Affirmed.

*Price & Whiting*, for appellant.

*Wilson & Cobb*, for appellee.

---

[1] Right of persons in charge of train to presume that child will get out of danger, see note in 6 L. R. A. (N. S.) 283.

STEERE, J. Plaintiff brought this action as administrator of the estate of his minor son, who was killed by one of defendant's trains at a street crossing in the city of Albion, Mich., on November 5, 1909.

The deceased, Vincent Mollica, was nine years and six months old, of ordinary size, very bright and quick to learn. He lived with his parents on the south side of defendant's track, and was attending school 2½ blocks north of the crossing where he was killed. He had crossed the track twice a day in going to and returning from school since the opening of the same in September of that year. School dismissed at 3:30 p. m., after which he delivered newspapers over a route of his own.

On the afternoon in question, at the close of school, he and an older boy, named Harold Ford, who was also going to the newspaper office, located south of the track, started down Berrien street, hurrying for the office, running part way. The railway was double-tracked at this crossing, and a passenger train, just then pulling out from the railway station, was approaching the crossing from the west. The older boy, progressing faster than deceased, got across in advance of the train, which was on the south track. When deceased arrived at the track on the west side of Berrien street, the train was crossing, and he waited for it to pass, standing in the middle of the north track, looking at it and making motions towards it. Some of the witnesses testified he was waving his hands, or making signs to passengers; and others that he seemed to pick up something and throw it at the car wheels. While thus occupied, a through "blind baggage" express train on the north track, going west, passing through the city without stopping, struck him. There was a curve in the railroad track 1,400 feet east of the crossing; and the train was in sight from the time it rounded that curve.

Numerous witnesses of the accident were sworn, most of them being schoollmates. Their accounts of the accident

are substantially the same, but naturally varying according to the point of observation and the particular things which each individual especially noticed. Several of the witnesses saw the train which killed him approaching and, recognizing the danger, shouted to warn him; but evidently the noise of the passing train on the south track prevented him hearing them.

There was testimony that many trains passed back and forth daily on this road, and that when school was out the children were in the habit of hurrying towards the track to cross ahead of, or see pass, the passenger train due at that time. Just when the blind baggage train was due in Albion is not definitely shown by the testimony. It left Jackson at 2:25; and it was the second section which struck the deceased, which was a mile or more behind the first. One of plaintiff's witnesses, a boy of 13 years of age, testified:

"The blind baggage hardly ever passed at that place; it passed at different places. I don't know at what hour it was in the habit of going through Albion; the school children didn't usually see it. I thought it was running pretty fast that day. I didn't see it much until it got right onto him. It usually goes pretty fast through there, anyway. It does not stop at Albion."

There was also testimony to the effect that others of the school children ran towards the track on the day in question along Berrien and other streets, as was common with them, to see the passenger train go past; and some of them on Monroe street, to the west of Berrien, stopped and stood on the north track, and were warned away by the flagman stationed there.

At the conclusion of plaintiff's testimony, counsel for defendant made the following motion:

"We ask the court to order a verdict for the defendant, because the plaintiff's proof shows that decedent was guilty of negligence that contributed to the accident or injury, and because they do not show by their evidence that the defendant was guilty of either negligence or gross negligence, as they charge in their declaration."

This motion was renewed at the conclusion of defendant's testimony.

Counsel for plaintiff then requested the court to charge in part as follows:

"Plaintiff requests the court to instruct the jury that the defendant was negligent in violating the ordinance of the city of Albion, and that the question of whether the plaintiff's intestate was negligent is for the jury; * * * also that the question of gross negligence on the part of the defendant, and its negligence in not giving warning sooner and taking steps to slacken the speed of its train sooner, is for the jury, and if they believe the defendant was guilty of gross negligence, plaintiff should recover a verdict, regardless of whether Vincent Mollica contributed by his negligence to the injury which caused his death."

This request was refused, and the court directed a verdict in favor of defendant, charging the jury in part as follows:

"That, under the evidence here, there can be no question but what this unfortunate boy was guilty of negligent conduct. It is a great misfortune; and it is a case, of course, that is most pitiable, and which touches one's sympathies, but that cannot alter the legal situation. For that reason, the reason that he was guilty of negligence, there can be no recovery in a case of this kind, except, on the other hand, the agents of the defendant company in charge of the trains were guilty of gross negligence, which means that they either wantonly or recklessly inflicted the injury which resulted in this boy's death. The undisputed evidence in the case shows as a whole that the engineer, the moment that he was warned of impending danger, resorted to every possible means to avert the injury; therefore it cannot be said, and there is no evidence in the case to justify a finding, that there would be gross negligence. Under those circumstances, it is my duty, although it is a responsibility the court does not assume without some hesitation, to enter a direction for a verdict, and the record may show that a verdict is entered in this case, under direction of the court, of not guilty. * * *"

Error is regularly assigned on the refusal of the court to give plaintiff's requests and the charge of the court in thus directing a verdict for defendant.

The declaration avers that the train was run at a reckless and dangerous rate of speed, to wit, at the rate of 20 miles an hour or faster, in violation of an ordinance of the city, restricting the rate of speed of trains within the corporate limits to 10 miles an hour. The only definite testimony as to speed is that of the engineer and fireman of the train, who testified that, as they approached the city, the brakes were tested, the steam shut off at the whistling post, over a mile out, and the train slowed down to about 20 miles an hour.

The rate of speed is not, *per se*, negligence. In the absence of an ordinance, it has been held that 25 miles per hour crossing a street in a city of 17,000 inhabitants is not negligence. *Tobias* v. *Railroad Co.*, 103 Mich. 330 (61 N. W. 514). While the violation of an ordinance is admissible as evidence tending to show negligence, it is not, standing alone, negligence which would justify recovery, or upon which an action could be based. *Haines* v. *Railway Co.*, 129 Mich. 475 (89 N. W. 349); *Flater* v. *Fey*, 70 Mich. 644 (38 N. W. 656); *Blickley* v. *Luce's Estate*, 148 Mich. 233 (111 N. W. 752).

The two pivotal points presented for adjudication by the assignments of error are: *First*, does the plaintiff's testimony, taken as true, show that the deceased was free from contributory negligence on his part; and, *second*, is there any testimony showing that the engineer of the train which caused the injury was guilty of gross negligence, amounting to an intentional failure to perform a manifest duty in reckless disregard of the consequences affecting the life or property of another.

Were deceased an adult, no one would seriously question his extreme carelessness and negligence in standing upon a railroad track in broad daylight, while a train, in full view a sufficient time and distance for him to have easily stepped aside and avoided it, bore down upon and struck him.

It is claimed that deceased was a child of tender years, confused, and his attention diverted by the passenger

train which had stopped his progress, and which drowned the sound of the other approaching train, under which circumstances he cannot be held accountable as a person of mature years and experience.

Where the plaintiff is an infant of such tender years as to be without discretion, contributory negligence cannot be imputed to him; and such is the general presumption where the child is under the age of 7 years. It is also held by some authorities that such presumption obtains, *prima facie,* until the age of 14 years is reached; but, where capacity is shown, the general rule of contributory negligence will apply. While in the case of a child between the ages of 7 and 14 years the allegation of age might raise some presumption which tends to remove the imputation of neglect, it is mainly a matter of pleading; and the fact, when proven on the trial, does not establish that freedom from negligence essential to recovery.

In the case of a child of the age of deceased, the law is well settled in this State that he is responsible for the exercise of such care and vigilance as may reasonably be expected of one of his age and capacity; and the want of that degree of care is negligence. The fact that he may not have as mature judgment as an adult will not excuse him from exercising the judgment and discretion which he possesses, or from heedlessly rushing into known dangers. Where the dangers are known and understood by him, the rule of contributory negligence is fully applicable.

In this case, therefore, deceased is chargeable with a degree of care proportionate to his age and capacity. It is undisputed that he was 9 years and 6 months old, of average size, possessed of all his faculties, very bright and intelligent; that he crossed these tracks four times each day when attending school, was familiar with the rush of moving trains, and knew that many passed daily. He knew and understood the danger and consequences of standing upon a railroad track when a train was passing over it as fully as the oldest and most experienced person; and he knew equally well that such danger could be easily

avoided by keeping off of, or stepping aside from, the railway track. The boy's father testified that he had cautioned him to be careful and not get hurt by the cars; that he was bright, and stood high in his studies; that he understood the danger of being on the track when a train approached, and "would have got off the track, sure," had he seen the train in time. He had that capacity to understand, and the ability to perform, on which duty is predicated. It is manifest that he appreciated the danger when he at last, but unfortunately too late, noticed the train coming towards him; for he hurriedly attempted to jump to one side and avoid it. He had an unobstructed view, from where he stood, down the track for a quarter of a mile; and the train was in sight when he went upon the track and took his stand there. A glance in that direction, occupying but an instant, as he approached the danger zone where he stopped, would have informed him and saved his life; if seasonably discovered, he would have apprehended and avoided this danger as intelligently and quickly as any adult. He was old enough to know, and in the very nature of things did know, that where he stood was a dangerous place. This is not a case where he was required to exercise judgment and experience in choosing between two courses to avoid danger; he was not confronted with any dangers which he did not understand. When struck, he was standing at ease, carelessly amusing himself by throwing something at the train passing on the other track, or saluting its passengers; and his only danger was in the spot he selected to stand upon.

Such being the undisputed facts, did the diversion of watching a passing train and the thoughtlessness and carelessness of youth excuse him for thus exposing himself needlessly to such apparent danger? It has been held by this court that, when a boy possesses such a knowledge and understanding of dangers attending the course he pursues, the fact that he is more reckless and not as discreet and cautious as a man does not in itself excuse him;

but he is chargeable with the same degree of care for his own personal safety as an adult, within the scope of his understanding of the risk he takes. *Ecliff* v. *Railway Co.*, 64 Mich. 196 (31 N. W. 180).

It is well established that, where the facts are undisputed, and the minds of reasonable men are inevitably led to the same conclusions and to draw the same inferences, it is the duty of the court to dispose of the matter as a question of law.

Applying this rule to the case of minors, it has been held that, where a boy $5\frac{1}{2}$ years of age, with permission of his mother, started to go across a traveled street, and running quickly from the curb was struck by defendant's horse and run over, the accident occurring in broad daylight, the child failed to exercise the care which was commensurate with his age and knowledge, and he could not recover. *Hayes* v. *Norcross*, 162 Mass. 546 (39 N. E. 282).

A boy $7\frac{1}{2}$ years old, being shown to have the capacity to understand that if he remained on the railway track while a train passed he would be run over, having lain down upon the track and gone to sleep, it was held his negligence precluded recovery. *Krenzer* v. *Railway Co.*, 151 Ind. 587 (43 N. E. 649, 52 N. E. 220, 68 Am. St. Rep. 252).

A bright boy 9 years of age, familiar with the movement of trains, who stood beside a railroad track holding a string, one end of which was attached to his wrist and the other end to a piece of ice on the opposite side of the track, was injured by a passing engine striking the string. This was held to be conclusive evidence of contributory negligence. *Spillane* v. *Railway Co.*, 135 Mo. 414 (37 S. W. 198, 58 Am. St. Rep. 580).

A boy 12 years old, who stood on one of three railroad tracks waiting for a train to pass, playing at the time, being at a crossing with which he was familiar, was struck by an engine running on the track where he stood. He was held guilty of negligence as a matter of law. *Cleveland, etc., R. Co.* v. *Heiman*, 16 Ohio Cir. Ct. R. 487.

A bright and intelligent boy 10 years old, going on an errand, while walking on the outer ends of the railway ties, was struck by a rapidly moving train. He was held guilty of negligence which precluded a recovery. *Moore* v. *Railroad Co.*, 99 Pa. 301 (44 Am. Rep. 106).

A boy 11 years of age, lounging or playing on a network of tracks, and struck by a passing engine, was held guilty of contributory negligence, as a matter of law. *Masser* v. *Railway Co.*, 68 Iowa, 602 (27 N. W. 776).

A similar rule has been applied to boys 8 and 9 years old, when injured on railway tracks. *Murray* v. *Railroad Co.*, 93 N. C. 92; *Potter* v. *Railroad Co.*, 92 N. C. 541.

In this State, the same rule has been applied in *Henderson* v. *Railway Co.*, 116 Mich. 368 (74 N. W. 525), *Truedell* v. *Railway Co.*, 126 Mich. 73 (85 N. W. 250, 53 L. R. A. 271), *Perego* v. *Railway Co.*, 158 Mich. 225 (122 N. W. 535), and in the recent case of *Knickerbocker* v. *Railway Co.*, 167 Mich. 596 (133 N. W. 504). In this last case, the principles involved are ably discussed, and the authorities cited and reviewed. It was there held that a boy 10 years old, killed at a railway crossing, was, as a matter of law, guilty of contributory negligence in riding his bicycle onto the track in front of an approaching train; there being an unobstructed view for a distance of nearly half a mile in the direction of the approaching train. The boy was shown to have lived in the vicinity of the railroad track, was accustomed to going about the city, and able to ride and manage a bicycle. The one he was riding was a new one belonging to his father, which deceased was allowed to ride at that time; and he was particularly interested in and entertained by it, evidently to the exclusion of all other matters. It was there said:

" The court erred in submitting to the jury the question of the contributory negligence of plaintiff's intestate. * * * Under the circumstances, he was chargeable with some degree of care for his own safety; and it does not appear that he exercised any care."

Under the rule that, where the negligence of the

defendant is wilful, wanton, or gross, contributory neg-
ligence is no defense, it is claimed by appellant that, even
though deceased was guilty of contributory negligence,
there is testimony to go to the jury tending to show that
the engineer, having discovered the danger in time to
avoid the accident, did not act promptly, as the law re-
quires in such cases, but recklessly continued on and ran
upon the boy.   Counsel for plaintiff say in their brief:

"It was a fair question for the jury whether or not the
engineer of the blind baggage was keeping a lookout, or
whether he saw Vincent at all until he was so close to
him that he could neither slacken the speed of his train or
give him timely warning."

It is undisputed that it was broad daylight; and there
was an unobstructed view from the track towards the ap-
proaching train for nearly a quarter of a mile.   The boy
came upon the north track and stopped, just as the pas-
senger train was crossing the street; the two trains passed
each other practically at that point; the blind baggage
was just approaching.   The engineer testified, and his
testimony is undisputed, that he shut off his steam, ap-
plied the brakes, and slowed down the train as it passed
through the city, reducing it to about 20 miles an hour;
that he kept a sharp lookout, and when he came within
about 300 feet of the Berrien street crossing, just as he
was meeting the passenger train, deceased came upon the
north track and started to play, or make motions as though
he was throwing something; that witness at once applied
the brakes, shoved the handle clear over to the full emer-
gency, and gave the danger signal with a short, sharp
series of blasts of the whistle, continuing them until he
struck the boy; that at the moment the boy came upon
the track and commenced making motions he realized that
he was in a position of danger, and did everything within
his power to stop the train.   He also testified that he first
saw the boy, and particularly noticed him, as he was from
12 to 15 feet from the track; the train then being about
450 feet from the crossing.   When first seen by the engi-

neer, though approaching the track, he had no idea the boy was going upon it, and anticipated no danger from seeing him near it until he stepped inside the rails, which took but an instant. The witness at once realized the gravity of the situation and did everything in his power to avert the accident, having, before that time, assumed he would not go upon the track, but would take care of himself.

It is particularly insisted that the engineer was guilty of gross negligence in not taking action and attempting to stop his train when he saw the boy approaching the track. In *Graf* v. *Railway Co.*, 94 Mich. 579 (54 N. W. 388), it was said of a party approaching a railroad track at a street crossing:

"Had the brakeman seen the deceased as he was approaching, he certainly would have had the right to presume he would stop. He might have stopped with perfect safety when within three or four feet of the track. No obligation rested upon the brakeman to attempt to stop the cars until he saw that the deceased intended to step in front of them, regardless of the danger."

And in the *Knickerbocker Case, supra*, where the engineer saw the boy 25 or 30 feet from the track, approaching it on a bicycle, it was said:

"But it is not negligence—clearly it is not gross negligence—to fail to stop or to fail to gain complete control, of a train of cars, merely because persons are seen approaching the track upon a highway on foot, or with vehicles. Such an approach is not usually evidence of negligence, and such persons are not usually in any peril. No error was committed in refusing to submit the question of 'gross negligence' to the jury."

This language is equally applicable to the case at bar, and is controlling.

The judgment is therefore affirmed.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.