DASOVICH v. LONGACRE.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
    On appeal from judgment on directed verdict for defendant,
    the testimony must be viewed in the light most favorable
    to plaintiff.

2. TRIAL—WITNESSES.
    A party is not required to make his case by a single witness.

3. AUTOMOBILES—MINORS—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE
    —CONTINUANCE OF CAR ON PAVEMENT.
    Where testimony shows that girl, 12 years and 8 months of
    age, of average, or better than average, mentality looked
    both ways as she started to cross 16- to 18-foot macadam
    surface of highway in the country and is presumed to
    have seen defendant's car coming around curve some 500
    to 600 feet away and determined she could safely cross
    paved portion and had proceeded to a place beyond the
    pavement before being struck, the question of her con-
    tributory negligence was for the jury since she had a
    right to assume that he would drive his car on the paved
    portion of the highway.

    NORTH and BUTZEL, JJ., dissenting.

Appeal from Monroe; Golden (Clayton C.), J.
Submitted October 6, 1948. (Docket No. 32, Calen-
dar No. 42,850.) Decided February 28, 1949.

Separate actions by Paul Dasovich, individually
and as guardian of Gertrude. Dasovich, a minor,

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am. Jur., Appeal and Error, § 944.
[2] 53 Am. Jur., Trial, § 106.
[3] 5 Am. Jur., Automobiles, § 711.
[3] Duty and liability to persons struck by automobile while
    crossing street at unusual place, or diagonally. 14 A.L.R.
    1176.

against William Longacre for injuries sustained
when plaintiff's ward was struck by defendant's auto-
mobile.   Cases consolidated for trial.   Directed ver-
dicts and judgments for defendant.   Plaintiff ap-
peals.   Reversed.

*Golden & Griffen,* for plaintiff.

*Francis T. Ready,* for defendant.

NORTH, J. *(dissenting).*   This is an appeal by
plaintiff in two cases arising out of an accident
where an automobile owned and driven by defendant
struck and seriously injured plaintiff's daughter,
Gertrude Dasovich.   In each case, at the conclusion
of testimony for plaintiff, a verdict for defendant
was directed on the ground that plaintiff's daughter,
who was a minor, was guilty of contributory negli-
gence as a matter of law.   The two cases, one by the
father of Gertrude as her guardian for the pain,
suffering and injuries sustained by her, and the
other by the father in his own right for expenses
incurred in consequence of his daughter's injuries,
were consolidated both on the trial and on this ap-
peal, and are presented here on a single record.

Decision must be made on the assumption, abun-
dantly sustained by the record, that defendant was
guilty of negligence.   The sole issue presented on
this appeal is whether the ruling of the circuit judge
that the injured girl was guilty of contributory
negligence as a matter of law should be sustained.
For convenience we hereinafter refer to Gertrude
Dasovich as plaintiff.

At approximately 4 o'clock in the afternoon of
April 5, 1943, plaintiff, a girl then 12 years and 8
months of age, was a pedestrian on Bluebush road,
in Monroe county, Michigan, which at the point of
accident is an easterly and westerly highway with a

macadam surface 16 to 18 feet wide. To the east of the place of accident this highway is straight and level for 500 or 600 feet, where the highway curves. The day was clear, and except for defendant's automobile there was no other vehicular traffic at the time and place, nor were there any attendant distracting circumstances. Gertrude was proceeding home from school, walking in a westerly direction on the berm at the south side of the pavement, accompanied by three school boys. On direct and redirect examination plaintiff testified:

"I continued to walk on the south side of the road until I came to our mail box. The mail box is right across from our old driveway and this was the driveway into our house. When we got to the mail box the boys with me * * * went on home farther west. * * * Before starting to cross (the pavement) I looked to see if any cars were coming and started to cross. I saw one coming around the bend. It was coming from the east going west. In other words, it was coming from the same direction that we had been walking. I then continued to cross the road. I walked across the road. I do not know if anything hit me. * * * I got to the other side. * * * To the cinders of the road. * * *

"Q. When you headed across that road going from the south side to the north side you were walking directly for your driveway as I understand it?

"A. Yes. * * *

"When this car was coming around the curve, my idea was that this car was coming about 60 miles an hour."

On cross-examination she further testified:

"I then looked around and saw an automobile coming around the curve and after I saw this automobile, I started across the road. I didn't run, I just walked across. After I saw the automobile I didn't continue to look at it. I don't remember how many times I

did look at it. I don't remember whether I saw it more than the first time when I saw it come around the curve. The only recollection is that I saw an automobile coming around the curve and then started to cross the road. I don't remember whether I saw it again or not. I have no recollection of seeing the car after that, yet I remember walking clear to the edge of the pavement.

"Q. How do you know that you reached the edge of the pavement before you were struck?

"A. I remember walking on the cinders.

"Q. Do you remember whether you had both feet on the cinders at the time you were struck?

"A. I don't remember."

Other testimony in the record discloses that at the time plaintiff was struck by the right front fender of defendant's automobile she was at or very near the north edge of the pavement, possibly on the cinders just north of the pavement. There is also testimony that at the time of the accident defendant was driving his automobile with the two right hand wheels off the north edge of the pavement and on the cinders. In a deposition of one of plaintiff's witnesses which was received in evidence, the following appears:

"When Gertrude was hit she had one foot off the pavement and one foot on, she got clear across the highway to the north side, when the car hit.  *   *   *

"Q. When Gertrude was hit, Mrs. Trombley, was the car on or off the highway?

"A. It had two wheels off the highway.

"Q. Two wheels, you mean one side of the car?

"A. Just one side of the car, yes.

"Q. About how far off the highway would you say the car was?

"A. About 6 feet.  *   *   *

"I would estimate that the car was off of the highway before it hit Gertrude, about 100 feet.  *   *   *

I would say I was (in my house looking out of a window) approximately 150 feet from the place where Gertrude was hit. * * * Gertrude was just leaving the pavement when she was struck. * * * I couldn't see the pavement either on that (north) said (side) of the road, but I could see the pavement on the opposite side of the road. * * * It happens I don't know how wide this Buick was. * * * I would say about half of the car was off of the highway. * * * It is true that I couldn't see Gertrude's feet when she was hit. * * * At the point where Gertrude got hit, part of the highway on the north side of the highway that I couldn't see was 2 feet, I believe, I could see the rest of it all right past that. Gertrude had gotten across the highway and was within this 2 feet that I couldn't see, she was walking, I could see her walking."

As before noted, at the time of the accident plaintiff was 12 years and 8 months of age. At the time of the trial (January, 1944) she was in the eighth grade at school, was a good student having A and B grades; and so far as disclosed by the record she was of normal physical development and obviously was of average, or better than average, mentality. She had lived at the same place for about three years prior to the accident and had frequently traversed the highway on which the accident occurred. Notwithstanding plaintiff was a minor, she was in duty bound when crossing this highway to use such a degree of care and caution as in law is required of one like circumstanced. Such has been our holding in cases involving injured minors who were considerably younger than plaintiff herein. See *Stahl* v. *Michigan Central Railroad Co.*, 227 Mich. 469; *Brinker* v. *Tobin*, 278 Mich. 42; and *Ackerman* v. *Advance Petroleum Transport, Inc.*, 304 Mich. 96.

Viewing the testimony in the light most favorable to plaintiff, as must be done in passing upon the issue under consideration, the conclusion necessitated

is that she was guilty of contributory negligence as a matter of law, and that the trial court ruled properly in directing a verdict for defendant. The burden of proving freedom from contributory negligence was on plaintiff (*Batchelor* v. *Famous Cleaners & Dyers, Inc.*, 310 Mich. 654), but she testified that before she started across the pavement, "I then looked around and saw an automobile coming around the curve and after I saw this automobile, I started across the road. * * * I just walked across. After I saw the automobile I didn't continue to look at it. * * * I have no recollection of seeing the car after that, yet I remember walking clear to the edge of the pavement. * * * When this car was coming around the curve, my idea was that this car was coming about 60 miles an hour."

The uncontradicted record is that plaintiff, after she saw defendant's rapidly approaching car, walked from a place of safety into the path of the automobile and there is no testimony that she again looked in the direction of the oncoming car after she started to cross the pavement. In doing so, plaintiff did not exercise the reasonable degree of care and caution required by law of one under like circumstances. Instead plaintiff was guilty of contributory negligence, notwithstanding defendant's car was being driven somewhat off the northerly edge of the pavement, which admittedly was negligence on his part. In the instant case it must be said as Mr. Justice BUTZEL wrote in affirming judgment *non obstante veredicto* for defendants in *Franks* v. *Woodward*, 258 Mich. 447, which was a suit involving injuries resulting from an automobile striking a boy 10 years and 10 months old:

"All the physical facts, however, when viewed in the light most favorable to plaintiff, show beyond any question that had Lawrence (the injured boy)

looked he could and must have seen the approaching' car, and in that event with reasonable care he could have avoided the accident." (Citing numerous cases.)

*Beers* v. *Arnot,* 308 Mich. 604, in the legal aspect of the facts, is decidedly parallel to the facts in the instant case; and we therein affirmed the trial court's holding that plaintiff was guilty of contributory negligence as a matter of law. Kenneth Beers, 18 years of age, got out on the north side of a truck which was stopped headed west in its proper lane of travel on the north side of an 18-foot pavement. Any traffic approaching from the west could be seen a distance of 30 rods or more. Mr. Justice SHARPE, writing the opinion which was concurred in by all the other justices, stated the pertinent facts and the applicable law as follows:

"He (Kenneth Beers) then walked east along the north side of the truck, and then to the south, around the back of the truck until he approached the southeast end of the truck. He then looked to the west, saw no cars approaching, and proceeded to walk south across the 9 or 10 feet of black-top. He reached the edge of the black-top when he noticed the approach of Arnot's car. He then gave a lunge and was on the shoulder of the road at or about the south edge of the black-top when he was struck by defendant Arnot's car. As a result of the accident, Kenneth Beers was severely injured. * * *

"If plaintiff had made a proper observation as he stood in the middle of the highway, he would have seen defendant's automobile traveling at a speed of 45 to 50 miles per hour and at a distance of approximately 60 feet away. To attempt to walk across the south half of the highway and then jump at the last instant under the circumstances of this case was in disregard of his own personal safety and (on the ground of contributory negligence) pre-

cludes recovery. The trial court was right in direct-ing a verdict in favor of defendants."

In the prevailing .opinion in *Young* v. *Martinich,* 279 Mich. 267, wherein verdict directed against plaintiff on the ground of contributory negligence was affirmed, the facts are quite similar to those in the case at bar, especially in that plaintiff Young knew, as did plaintiff in the instant case, that de-fendant's automobile was approaching. The opin-ion states that Young, when "walking his usual gait," was struck by defendant's car "just as he was about to step on the 'tree lawn' on the north side of the street;" and the headnote reads:

"Pedestrian who walked northerly and diagonally across the village street in evening after looking twice in each direction and saw automobile lights 1,300 or 1,400 feet to east *held,* guilty of contribu-tory negligence as a matter of law for failure to look again to east upon reaching center of street when he knew car was approaching, in action for injuries received when hit at northerly edge of street by de-fendant's car driven westerly at speed of 40 or 45 miles an hour."

In our comparatively recent opinion in *Malone* v. *Vining,* 313 Mich. 315, written by Mr. Justice STARR and concurred in by all the present members of the Court except Justice DETHMERS, who was not at that time a member of the Court, we reviewed the appli-cable law as follows:

" 'Plaintiff was guilty of contributory negligence, as a matter of law, in leaving a place of safety and proceeding into a zone of danger in the path of a rapidly approaching automobile.'

"Under present-day traffic conditions a pedes-trian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judg-

ment as to its distance away and its speed, (3) continue. his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances. In *Pearce* v. *Rodell,* 283 Mich. 19, 37, we approved the following charge by the trial court:

" 'Pedestrians upon the public highway have a right to assume in the first instance the driver of an automobile will use ordinary care and caution for the protection of pedestrians, nevertheless the pedestrian must not rest content on such assumption, if there comes a time where he knows, or ought to know by the exercise of reasonable care, he is being placed in danger. He must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances.'

" 'We have repeatedly held that one must look before entering a place of possible danger, such as crossing an intersection, and maintain observation while crossing." *Carey* v. *De Rose,* 286 Mich. 321, 323. * * *

" 'In many cases we have held that one is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the oncoming vehicle until the instant before or at the time of collision.' *Sonfilian* v. *Wiedman,* 291 Mich. 697, 700." (Citing many cases.)

In the opinion of Mr. Justice Bushnell, concurred in by all the members of the Court, in *Brinker* v. *Tobin, supra,* wherein we affirmed a directed verdict for defendant charged with negligently injuring a girl 7 years and 7 months of age by striking her with an auto, we approvingly quoted from *Mollica* v. *Michigan Central Railroad Co.,* 170 Mich. 96 (L. R. A. 1917F, 118), the following:

" 'In the case of a child of the age of deceased (9 years, 6 months), the law is well settled in this State

that he is responsible for the exercise of such care and vigilance as may reasonably be expected of one of his age and capacity; and the want of that degree of care is negligence. The fact that he may not have as mature judgment as an adult will not excuse him from exercising the judgment and discretion which he possesses, or from heedlessly rushing into known dangers. Where the dangers are known and understood by him, the rule of contributory negligence is fully applicable.' "

Also in *Brinker* v. *Tobin, supra,* as bearing upon contributory negligence of a minor, we said: "The authorities on this question were collected in *Knickerbocker* v. *Railway Co.,* 167 Mich. 596." A headnote in that case reads:

"Where it was undisputed that an infant of 10 years of age, killed at a railroad crossing, could have seen the approaching train for a space of 70 feet before he reached the rails, the view being unobstructed for a distance of half a mile or more up the track, that he was of ordinary intelligence, had lived in the vicinity of railroad tracks and was accustomed to go about the city and to manage the bicycle on which he was riding when the accident occurred, he was, as a matter of law, chargeable with contributory negligence."

Again in *Ackerman* v. *Advance Petroleum Transport, Inc., supra,* we said (p. 106):

"The fact that plaintiff's decedent may not have had as mature judgment as an adult will not excuse him from exercising the judgment and discretion which he possessed or from heedlessly rushing into apparent and known danger. If he (a boy slightly over 8 years of age) knew and understood the risk and danger of crossing a street intersection in which traffic was passing, then the rule of contributory negligence is properly applicable."

In *Trudell* v. *Grand Trunk Railway Co.*, 126 Mich. 73 (53 L. R. A. 271), the following statement of the law is made: "Age is not the true test in such cases (involving the issue of contributory negligence as a matter of law). It is the intelligence of the boy, not his age (7 years, 4 months), that must control."

As before noted, plaintiff in the instant case had the burden of proving freedom from contributory negligence. This requirement was not met by her testimony which at best is that she did not "remember" whether she made a subsequent observation of defendant's approaching automobile after she first observed it and its rapid rate of speed. There is no other testimony as to this essential fact. The uncontroverted testimony in the instant case clearly discloses that plaintiff, under our decisions, by walking into the path of an automobile which she had observed and knew was approaching at a rapid rate of speed, was guilty of contributory negligence as a matter of law. The judgment entered in the circuit court for defendant in each of these consolidated cases should be affirmed. Costs to appellee.

Butzel, J., concurred with North, J.

Sharpe, J. I am not in accord with the holding of Mr. Justice North that Gertrude Dasovich was guilty of contributory negligence as a matter of law.

The trial court directed a verdict in favor of defendant at the conclusion of plaintiff's case. It is a fundamental rule that where the court has directed a verdict against plaintiff on the ground of contributory negligence as a matter of law the evidence must be viewed in the light most favorable to plaintiff. See *Lane* v. *B & J Theatres, Inc.*, 314 Mich. 666.

It is also the rule that a party is not required to make his case by a single witness. See *Bullen* v. *Wakefield Crushed Stone Co.*, 235 Mich. 240. There

was testimony that defendant's automobile rounded a curve, was going 50 miles an hour, swerved and went off the paved portion of the road on the north side.

Edward F. Gilstorff, a witness produced by plaintiff, testified:

"Longacre's car continued to go ahead of me and I saw it go around the next curve; that is the curve immediately prior to the Dasovich home. Longacre's car went off of the road when it tried to go around this bend. It went off on the north side. * * * I would say that the defendant's car when it went around the last curve before the Dasovich home was going around 40 to 50 miles an hour. * * * The next time I saw the defendant's car after it rounded that curve was when I got up to the same curve he was down by the Trombley house and he swayed across the road and went off on the road to one side. When I say the car swayed—the rear end of the car swayed. It was going back and forth. I would estimate the swaying about 6 or 8 inches. I saw this when I was coming around the curve. I would say the defendant put on his brakes because I saw the stoplight on. He was then off on the berm of the road on the north side of the road. I would say he was off the road from 18 to 24 inches off the highway with two wheels. After the car went off the highway on the right-hand side of the road I saw the car stop and pick up a girl. It stopped about 30 or 40 feet on the other side of the driveway; the old driveway that went into the Dasovich home. When this occurred, I was back by the Trombley house, east of the Trombley house, I pulled off the highway. I came down this highway about 30 to 35 miles an hour. When I got up there, got out of my car, I saw the defendant jump out of the car and run around the back of the car and pick up a little girl and put her in the back end of the car. I saw where the little girl was lying. She was there in a little gulley in the driveway."

Paul Dasovich, plaintiff and father of the injured girl, testified:

"When I arrived home about 6 on the day of the accident, I made an examination of my driveway and the berm immediately adjacent to the berm. I found tracks of an automobile wheel, tires. I saw one set of tracks. These tracks were both on the east and the west side of my driveway. The tracks were 37 inches off of the highway. I measured it. I would say these tracks ran about 1½ to 2 inches in depth. The land or ground around the berm is sandy, no clay, just ordinary ground sand. These tracks started 39 feet east of the driveway and ended on the shoulder of the road 42 feet west. I measured those. There were additional marks on the pavement 26 feet southwest on the road. I haven't seen any other marks there. Those marks were tire marks on the shoulder stayed there for 2 or 3 months after that."

Alice Trombley, a witness for plaintiff, testified:

"Paul Dasovich and his wife and Gertrude live next door to me.    *    *    *    On the afternoon of April 5, 1943, I saw Gertrude Dasovich at approximately 4:10 p.m. coming from school. She was on the south side of the road on the berm.    *    *    *    There were also three boys with her. They were walking single file, Gertrude was ahead and the boys were behind her.    *    *    *    I saw an automobile around the curve at the time Gertrude was at the mail box. I saw the car out of the east window. It was rounding the curve. I noticed that the car was coming at a high rate of speed.    *    *    *

"I would say that this car was going between 50 and 60 miles an hour.    *    *    *    I saw Gertrude at the mail box. She was at the mail box when the car started to come around the curve and I crossed over and went to the south window and watched Gertrude come across the road.    *    *    *

"Q. Did Gertrude cross the highway, Mrs. Trombley?

"*A.* I would say she got across.   *   *   *

"*Q.* When Gertrude was hit, Mrs. Trombley, was the car on or off the highway?

"*A.* It had two wheels off the highway.

"*Q.* Two wheels, you mean one side of the car?

"*A.* Just one side of the car, yes.

"*Q.* About how far off the highway would you say the car was?

"*A.* About 6 feet.

"*Q.* Could you see that yourself?

"*A.* Yes, I could see that it was off the highway.

"*Q.* From your south window?

"*A.* Yes.   *   *   *

"I would say when it went past my house it was going about 50 miles an hour, perhaps. It was off the highway at that time. I would estimate that the car was off of the highway before it hit Gertrude, about 100 feet and after the car hit Gertrude, I would say it went beyond the driveway about 100 feet."

Gertrude Dasovich, the injured girl, testified:

"I continued to walk on the south side of the road until I came to our mail box. The mail box is right across from our old driveway and this was the driveway into our house.   *   *   *   Before starting to cross I looked to see if any cars were coming and started to cross. I saw one coming around the bend.   *   *   *   I walked across the road.   *   *   *

"*Q.* Do you remember how far you got across the highway, Gertrude?

"*A.* I got to the other side.

"*Q.* What is your best recollections, Gertrude? Do you remember how far you got across?

"*A.* To the cinders of the road."

There is testimony that when Gertrude started to cross the highway, she looked both ways and is presumed to have seen defendant's car coming around the curve, a distance of approximately 500 to 600 feet away. The principal question involved in this

case is whether she is guilty of contributory negligence in walking across a 16-to-18-foot highway under these circumstances. She had a right to assume that defendant would drive his car on the paved portion of the highway. Before starting across the highway, she made an observation and evidently determined that she could cross the paved portion of the highway in safety. There is evidence from which a jury could find that she crossed the paved portion of the highway before being struck by defendant's car. The contributory negligence of Gertrude Dasovich presents a factual question and should have been submitted to the jury.

The judgment is reversed and a new trial granted, with costs to plaintiff.

BUSHNELL, BOYLES, REID, and CARR, JJ., concurred with SHARPE, C. J. DETHMERS, J., concurred in the result.