## KNOOR v. BORR.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.

The testimony and legitimate inferences therefrom must be construed as favorably to plaintiff as is reasonably possible, where plaintiff appeals from directed verdict for defendant.

2. AUTOMOBILES—OVERTAKING VEHICLES—HILLS—LIGHTS—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

Showing made that due to bright headlights of westbound defendants, as they started to overtake and pass westbound truck and trailer while progressing uphill on a 20-foot 2-lane pavement in the rain at night an eastbound defendant motorist, driving at 50 or more miles per hour, lost control of his car and first hit the truck and later westbound plaintiff whose car followed behind westbound defendants' car that had finally returned to westbound lane between plaintiff and the truck, presented an issue of fact as to negligence of westbound defendant driver who was himself driving some 50 to 60 miles an hour.

3. APPEAL AND ERROR — DIRECTED VERDICT — INCONSISTENCIES IN TESTIMONY.

Inconsistencies or contradictory statements in the testimony of party against whom verdict was directed do not prevent application as to rule requiring interpretation of testimony most favorably toward such party.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 945.
[2] 5 Am Jur, Automobiles § 282.
[2] Reciprocal duties of drivers of automobiles or other vehicles proceeding in the same direction. 24 ALR 507; 47 ALR 703; 62 ALR 970; 104 ALR 485.
[3] Generally as to inferences upon direction of verdict, see 53 Am Jur, Trial § 340.
[4] 5 Am Jur, Automobiles § 362.
[4] Liability of wife for husband's torts. 12 ALR 1459.

4. AUTOMOBILES—WIFE AS CO-OWNER—STATUTORY PRESUMPTION—
   EVIDENCE.
   Defendant wife, as co-owner of car operated by her husband
   was subject to liability for injuries inflicted due to his neg-
   ligence in the absence of any testimony tending to rebut
   statutory presumption as to her knowledge and consent that
   it be used by him on the occasion in question (CL 1948,
   § 256.29).

Appeal from Kent; Brown (William B.), J. Sub-
mitted April 8, 1952. (Docket No. 1, Calendar No.
45,222.) Decided June 2, 1952.

Action by Martin Knoor against Harold Borr
and wife and Jack Rowe for injuries received in
automobile accident. Directed verdict and judgment
for defendants Borr. Disagreement of jury as to
defendant Rowe. Plaintiff appeals. Reversed and
new trial granted.

*Leo J. Henry (Harold Knoor,* of counsel), for
plaintiff.

*Mitts & Smith,* for defendants Borr.

CARR, J. · Plaintiff brought this suit in circuit court
to recover damages for injuries to his person and
his property suffered in a traffic accident. It was his
claim, as set forth in his declaration, that defendant
Harold Borr and defendant Jack Rowe were guilty
of concurring acts of negligence resulting in the au-
tomobile of Rowe striking and injuring plaintiff and
his vehicle. Said accident happened in the early
morning hours of August 28, 1949. Plaintiff was at
the time driving on US-16 in a westerly direction
about 5 miles east of Cascade, in Kent county. De-
fendant Harold Borr was operating an automobile
immediately preceding that of plaintiff, which was
owned by himself and the defendant Pauline Borr.

A short distance ahead of the car of defendants Borr was a truck or tractor to which was attached a trailer.

Plaintiff alleged in his declaration that defendant Harold Borr while ascending a hill undertook to pass the truck and trailer, and that in doing so he drove across the center line of the road so that his automobile was entirely on the south side, that is, in the eastbound lane of traffic. The pavement at such point was 20 feet in width. It was plaintiff's claim that at the time an automobile driven by defendant Rowe came over the crest of the hill at a high rate of speed, that Rowe was blinded by the lights from Borr's vehicle, which was a short distance ahead of him and blocking the south side of the pavement, that as a result defendant Rowe lost control of his automobile, struck the tractor or trailer, or both, and then crashed into the car driven by plaintiff. Defendant Borr had in the meantime returned to the north side of the pavement ahead of plaintiff's vehicle. As a result of the impact plaintiff claimed that he sustained severe personal injuries, that his automobile was damaged beyond repair, and that he also sustained other property loss.

The case was tried before a jury in circuit court, plaintiff asserting liability on the part of defendants Mr. and Mrs. Borr as well as defendant Rowe. At the conclusion of his proofs counsel for defendants Borr moved for a directed verdict in their favor, such motion being based principally on the claim that no negligence on the part of defendant Harold Borr had been shown. The motion was denied. Following the introduction of defendants' proofs a motion for directed verdict was made on behalf of Mrs. Borr, and was granted on the ground that she was not liable for possible negligence on the part of her husband and that such liability could not be predicated on her part ownership of the car. A

motion was also submitted and granted for a directed verdict in favor of defendant Harold Borr. The case was then submitted to the jury against defendant Rowe alone, the jury being told that Mr. and Mrs. Borr were not liable. A disagreement resulted. Plaintiff's motion for a new trial against defendants Borr was denied, and he has appealed.

The principal question at issue in the case is whether the trial court was correct in directing a verdict as to defendant Harold Borr. A verdict having been directed against plaintiff, the testimony and the legitimate inferences therefrom must be construed as favorably to him as is reasonably possible. *Dasovich* v. *Longacre,* 324 Mich 62; *Vukich* v. *City of Detroit,* 325 Mich 644. It was his claim on the trial and testimony was offered tending to show that defendant Borr pulled entirely out of the lane of westbound traffic and was on the south side of the road as Rowe's automobile came over the crest of the hill up which the tractor and trailer were proceeding, that the Borr car occupied the eastbound traffic lane, and that the lights were of such intensity as to blind defendant Rowe, causing him to lose control of his vehicle. On behalf of plaintiff it was insisted that Borr and Rowe were guilty of acts of negligence that together resulted in the collision of Rowe's car with that of plaintiff, and that in any event the negligence of defendant Borr was a proximate cause of the accident.

As a witness in his own behalf, plaintiff testified in part as follows:

"*Q.* You say you suddenly saw Mr. Borr's car get on the left side of the lane. You mean that he pulled over on the left lane of the highway?

"*A.* The left lane of the highway. That would be the southern part of the highway, the highway running west.

"*Q.* Was he completely over on the left lane of the highway?

"*A.* He was completely over and attempted to pass the truck.

"*Q.* You mean he had pulled up alongside the truck when you say he attempted to pass?

"*A.* He started to pull up next to it. I didn't say he was way toward the front of the truck. He was just at the rear half of the truck there attempting to pass the truck."

On cross-examination he gave the following testimony:

"*Q.* What you saw Mr. Borr do ahead of you was swing out and swing right back?

"*A.* No, he was completely out; he put on his brakes and came back.

"*Q.* Now, Mr. Borr's car was following behind this truck in a perfectly normal way up to the time it turned out, wasn't it?

"*A.* He wasn't—he was trying to pass it. I mean —Mr. Borr's car wasn't following behind this truck in a perfectly normal way up to the time it turned out—he was trying to pass it. * * * When he turned out I wasn't close enough to see any car in front of him going the other way, my vision was completely blocked by Mr. Borr's car and the truck. I didn't see any headlights coming when he turned out. Reflection is all I saw. I saw the reflection about the same time that he turned out, I would say.

"*Q.* And just as soon as you saw the reflection of the lights, he swung back on his own side of the road, didn't he?

"*A.* No. That is what alarmed us.

"*Q.* How far did he travel when you could see those lights on the opposite side of the road coming the other direction with this car there; how far did he travel?

"*A.* I don't know how many feet he traveled. I would say that he traveled a quarter of the distance of the semi-trailer on the other side of the road.

Possibly 8 or 10 feet. The truck was moving all of the time."

Plaintiff's witness Ernest Van Dam, who was a passenger in plaintiff's car, in testifying to his observations immediately preceding the impact, said:

"I was looking ahead when he started to pass. I didn't see a vehicle coming from the other direction at that time. All I saw was the reflection of lights over the crest of the hill. They were shining up in the air. It was raining that evening. I didn't see the headlights; I saw the reflection. I wouldn't know where the car coming from the opposite direction was when I saw the reflection. Before Mr. Borr started to pass I could have seen down the left-hand side if I had looked but I didn't look. The first time I looked was after he was out there, and after he was out there alongside the truck, all I could see was some reflection of lights that were shining up in the air down the road some distance. I did not hear a crash immediately afterwards. It was a matter of seconds. I can't say how many seconds. A car traveling 60 miles an hour goes over 80 feet a second. I can't determine how fast this car was traveling. We probably traveled 200 or 300 feet possibly during that interval, and we traveled that 200 or 300 feet while Mr. Borr's car was on the left-hand side of the highway with these lights reflecting up in the air in front of us."

The witness further stated, on re-cross-examination:

"The last time I saw the Borr car and the trailer before the impact was when they were right side by side completely blocking the entire highway and the only opening was the shoulder between the guardrail and the cement and at that time I could see just the reflection of headlights up in the air of this car coming towards me. You would just see the beams, like somebody shining a flashlight. We didn't see them over the Oldsmobile or anything.

I.do not know whether the Oldsmobile had its top up or down, I don't remember. The hill where this accident happened is upgrade for quite a ways and the hill is high enough so that it would be over the top of a regular car at the base of this hill. The Oldsmobile started to pass on the hill where the yellow marks were. The yellow marks were on the north side of the center line. I looked that night. I possibly could be mistaken but I doubt it. I have never gone back since to see if there were yellow marks on that highway."

Defendant Rowe was called by plaintiff for cross-examination. The following excerpts from his testimony indicate his claim as to how the accident happened and defendant Borr's connection therewith.

"When I reached the top of the hill I blinked my lights and ·the truck blinked its lights, and right afterwards there was another set of lights on the opposite side of the road from the truck. That other set of lights was parallel to the truck and was on the south portion of the highway on which I was traveling. I was driving east on the south portion of the highway and that other set of lights was on the south portion. At that time I was driving at least 50 miles an hour and I was just starting to go down the hill. When I first saw this other set of lights on my side of the highway I blinked my lights just as fast as I could, thinking that the other car was·going back in. I thought for a second he had just passed.

"*Q.* Just a moment, let me ask you this question before you go on. How far away from you was this truck and the other set of lights, when you first saw it?

"*A.* I would say when I first met the truck, I was approximately 500 feet.

"*Q.* You saw the truck when you were 500 feet away, is that right?

"*A.* Or possibly a little farther.

"*Q.* And the truck was driving on what portion of the highway?

"*A.* On his own side.

"*Q.* That would be the north portion, is that right?

"*A.* North side, correct.

"*Q.* And how far away from you was the second set of lights when you first saw them?

"*A.* I couldn't determine the distance because I was staring into the 4 lights. And when I blinked my lights, why, there was no response from the car on my side of the lane."

After testifying to striking the truck and attempting to pull off the highway on the right side, the witness proceeded as follows:

"*Q.* And at that time that you were pulling off the highway, were the headlights of this other automobile still shining in your eyes?

"*A.* As near as I can recall, they were because I had been blinded, and it looked like they were still there. * * *

"When I first got over the hill and saw the truck headlights on the north side of the road and the other set of headlights on the south side of the road I was blinded by the bright lights. I didn't strike the rear wheel of the tractor until I put my brake on and started to swerve. Then I hit the rear wheels of the truck-tractor as near as I can recall. Then I swerved off the road.

"*Q.* And as you cut back on to the road, you were still blinded by the same set of bright lights, is that right?

"*A.* I was blinded by lights.

"*Q.* And you struck the rear end of the truck at this time, isn't that right?

"*A.* I don't know what. I struck something; I don't know what it was.

"*Q.* Well, you remember striking somewhere?

"*A.* Yes.

"*Q.* And you were cutting back on the road, you were still blinded by bright lights?

"*A.* That's correct.

"*Q.* And as you swerved off the road, you were blinded by bright lights?

"*A.* That's right."

As a witness in his own behalf, defendant Borr testified that at the time he turned out to pass the tractor and trailer he was driving "about 50 or 60 miles an hour" and that he was not aware that the vehicle that he was seeking to pass consisted of a tractor and trailer until he "got alongside." It was his claim that he returned to the westbound lane of traffic when he saw the reflection of headlights coming over the hill. He admitted also that his automobile was entirely across the center line of the pavement, on the eastbound lane of traffic.

Without referring specifically to other proofs, we think it must be said that the testimony offered on behalf of plaintiff was of such character as to raise an issue of fact as to the negligence of defendant Borr. He doubtless realized that he was operating his automobile on a 2-lane highway. Before undertaking to pass the vehicle ahead of him, he was charged with the duty of making reasonable observations to determine if he could do so in safety. According to plaintiff's proofs, at the time defendant left his position in the westbound lane of traffic and drove ahead beside the trailer, the reflections from the headlights of Rowe's automobile were visible over the crest of the hill. If the witnesses for plaintiff could see such reflections, obviously defendant might have done likewise had he made careful observations. The exercise of due care should have prompted also a determination as to the approximate length of the vehicle that he was undertaking to pass. The testimony of defendant Rowe indicates that the headlights of the Borr car were directly before him

on the south part of the pavement, and that they were of such intensity as to blind him. If Rowe's testimony is correct, this caused him to lose control of his car and resulted in the accident.

An examination of the record brings us to the conclusion that it cannot be said there were no proofs in plaintiff's behalf from which the jury might have found that defendant Borr was guilty of the negligence charged against him, and that such negligence was a proximate cause of the injuries and property damage suffered by plaintiff. Construing the testimony in accordance with the rule above stated, we think that the determination of the question should have been left to the jury. It may not be said as a matter of law that the physical facts were such as to destroy any probative value of the testimony tending to support plaintiff's claims. Inconsisttencies or contradictory statements in the testimony of witnesses do not prevent the application of the rule as to the interpretation of the testimony by the court in passing on the correctness of a directed verdict. *Yampolsky* v. *Smith,* 320 Mich 647. The court was in error in directing a verdict as to the defendant Harold Borr.

The facts in the case are somewhat analogous to those involved in *Braendle* v. *Drum,* 254 Mich 372. In that case a bus operated for one of the defendants undertook to pass an automobile, about 9 o'clock in the evening, on US-16 a few miles west of Farmington. The night was dark and rainy. The pavement at the place where such passing was attempted was approximately 18 or 20 feet in width. The bus drove up beside the automobile that the bus driver was seeking to pass and at the same time an automobile driven by another defendant in the case approached from the opposite direction. Said driver claimed that he undertook to stop when he saw the bus in front of him, that his car skidded, and

that as a result he came in contact with the automobile in which the plaintiffs were riding. The trial court directed a verdict in favor of the operator of the bus line, on the ground that no negligence on the part of his driver had been shown. In reversing the judgment entered on the directed verdict, it was said:

"The question presented on the motion to direct a verdict was whether, under the circumstances, it was negligence on the part of the driver of the bus to turn to the left and attempt to pass the Voght car, and, if so, whether such negligence was the proximate cause of the collision and the injuries to the plaintiffs resulting therefrom.

"Had the driver of the bus been watchful, as it was his duty to be, in view of the darkness and the condition of the pavement at the time, due to the rain which was falling, he would necessarily have seen the approach of the car driven by Yeip when he turned out to pass the Voght car. By doing so he occupied that part of the pavement which Yeip would necessarily travel on in passing the 3 cars. He could not have planned on taking a position behind the Braendle car as the distance between it and the Voght car was only about 25 feet. These facts being considered, the jury might well have found that the driver was guilty of negligence in turning his bus to the left at the time he did.

"In our opinion they might also have found that his negligence in this respect was the proximate cause of the collision. *Tozer* v. *Railroad Co.,* 195 Mich 662, 666; *Jaworski* v. *Detroit Edison Co.,* 210 Mich 317, 320; *Butrick* v. *Snyder,* 236 Mich 300, 308."

In *Fitzcharles* v. *Mayer,* 284 Mich 122 (3 NCCA NS 565), a judgment for plaintiff under similar facts was upheld. There the question at issue was the liability of the owners and the driver of a taxicab. The driver, while operating such vehicle in the usual course of business, made a U-turn ahead of an auto-

mobile driven by another defendant in the case, which was approaching at a rate of approximately 60 miles per hour. The driver thereof, in attempting to avoid striking the taxicab, swerved his car to the left and collided with plaintiff's vehicle which was approaching from the opposite direction. It was held that under the circumstances whether there was negligence on the part of the taxicab driver was an issue for the jury. The court pointed out that there may be more than one proximate cause of an accident. Under the facts in the case and prior decisions the Court declined to say that there was any error of law in holding the owners and driver of the taxicab jointly liable with the owner of the vehicle that actually struck and injured the plaintiff.

This brings us to a consideration of the question whether the record indicates any proper basis for liability on the part of Mrs. Borr. No claim is made that she was in any way responsible for the manner in which her husband operated his automobile on the occasion in question. The claim of liability on her part is based on provisions of CL 1948, § 256.29 (Stat Ann § 9.1446) in force at the time of the accident involved in this case. Said section reads in part as follows:

"The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the State or in the failure to observe such ordinary care in such operation as the rules of the common law require. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her

father, mother, brother, sister, son, daughter, or other immediate member of the family."

The provisions quoted are now contained in the present motor vehicle code, PA 1949, No 300, § 401 (CL 1948, § 257.401 [Stat Ann 1952 Rev § 9.2101]). The presumption created by the statute is not, as a matter of law, overcome by the proofs in the case. We find no testimony tending to throw light on the question as to the manner of exercise of rights of ownership and control by defendants Borr with reference to the operation of their automobile. There is no showing of any fact or facts inconsistent with the statutory presumption of knowledge and consent by Mrs. Borr to its use by her husband on the occasion in question, nor to establish that he was entitled to such use without regard to her knowledge and consent. The trial judge, in granting the motion, apparently relied on *Mittelstadt* v. *Kelly,* 202 Mich 524. In that case proofs were introduced with reference to the use and ownership of an automobile claimed to belong to the defendants, father and son. The former in fact denied any interest in the vehicle which the son used when and as he pleased. There is no comparable showing in the instant case. Under the record here we are impressed that the decision in *Moore* v. *Noorthoek,* 280 Mich 431, in which it was held that a married woman was liable for the negligent operation of an automobile by her husband, the title of the vehicle having been issued in their joint names, is directly in point. See, also, *Buchel* v. *Williams,* 273 Mich 132. The primary question at issue is the interpretation of the statutory provisions above quoted. On the record before us it may not be said that, as a matter of law, there is no liability on the part of Mrs. Borr. We are constrained to hold, therefore, that the trial court was in error in directing a verdict in her favor.

The judgment entered by the trial court in favor of defendants Harold and Pauline Borr is reversed, and the case remanded with directions to vacate such judgment and to grant a new trial. Plaintiff may have costs.

NORTH, C. J., and DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.